①
12/21/0
nty

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA
ex rel

# 1: CV 00-2220

**THOMAS R. JONES #05208-000**

NO. _____

Full name & prison number
(if any) of Petitioner

JAKE MENDEZ (warden);
U.S. Parole Commission

Name of Respondent

**FILED
SCRANTON**

DEC 2 0 2000

PER _____
DEPUTY CLERK

(PERSONS IN FEDERAL CUSTODY)

PETITION FOR WRIT OF HABEAS CORPUS

Instructions – READ CAREFULLY

1.  In order for this petition to receive consideration by
the District Court, it shall be in writing (legibly handwritten
or typewritten), and the unsworn declaration signed by the peti-
tioner.  It shall set forth in concise form the answers to each
applicable question.  If necessary, petitioner may finish his
answer to a particular question on the reverse side of the page
or on an additional blank page.  Petitioner shall make it clear
to which question any such continued answer refers.

2.  Any false statement of a material fact therein may serve
as the basis of prosecution and conviction for perjury.  Peti-
tioners should therefore exercise care to assure that all answers
are true and correct.

3.  When the petition is completed, the original and three
copies shall be mailed to the Clerk, United States District Court,
Middle District of Pennsylvania, P.O. Box 1148, Scranton, Pa. 18501.

If you are unable to pay the $5.00 filing fee for this
action, you may petition the court to proceed in forma pauperis.
Two blank petitions for this purpose are included in this packet.
One copy should be filed with your complaint; the other copy is
for your records.

1.  Place of detention U.S.P Allenwood

2.  Name and location of court which imposed sentence _____
Surperior Court of the district of columbia; Washington, D.C.
_____

3.  The indictment number or numbers (if known) upon which
    and the offense or offenses for which sentence was imposed:

    (a)_____2nd Degree Murder(unarmed)_____

    (b)_____Carrying a pistol with out a license(misdormenor) Time-ser

    (c)_____

4.  The date upon which sentence was imposed and the terms of
    the sentence:
    (a)___8/13/97;w 937 Days jail credit; 768 Days good time;8 to24

    (b)___8/13/97;W 937 Days jail credit;  768 Days good time;1 to Run

    (c)___ConcuRRENT  with 8 to 24 years (Finish serving time)

5.  Check whether a finding of guilty was made

    (a) after a plea of guilty ____X_____

    (b) After a plea of not guilty_____

    (c) after a plea of nolo contendere_____

6.  If you were found guilty after a plea of not guilty, check
    whether that finding was made by

    (a) a jury _____NA_____

    (b) a judge without a jury _____

7.  Did you appeal from the judgment of conviction or the im-
    position of sentence?  Yes

-2-

8.  If you answered "yes" to (7), list

(a) the name of each court to which you appealed:

i.  District of Columbia Court of Appeals

ii. _____

iii. _____

(b) the result in each such court to which appealed:

i.  Have not been resolved; I'm trying to withdraw Appeal

ii. _____

iii) ba._____ ,

(c) the date of each such result:

i.  _____ N/A _____

ii. _____

iii. _____

(d) if known, citations of any written opinions or orders

entered pursuant to such results:

i.  _____ N/A _____

ii. _____

iii. _____

9.  State concisely the grounds on which you base your allega-
tion that you are being held in custody unlawfully:

(a) The U.S. Parole Commission Denied Me Parole for the exact same
reasons I received the sentence I receive which made me eligible for
Parole. (Double Jeopardy). Going by the Parole Commission's rules;
I am a good canidate for parole but the Parole Commission have went
against their own rules.

(b) The Parole Commission went outside of the rehearing guidelines
for no justifiable reason.

ag

(c)

10. State concisely and in the same order the facts which support each of the grounds set out in (9):

(a) U.S. Parole Commission's Rules Pertaining to D.C. Code offenders; The law

See Attached Memorandum

(b) The Parole Commission's Rules; Law

See attached Memorandum

(c)

11. Have you filed previous petitions for habeas corpus motions under Section 2255 of Title 28, United States Code, or any other applications, petitions or motions with respect to this conviction:

NA

12. If you answered "yes" to (11), list with respect to each petition, motion or application

(a) the specific nature thereof:

NA

i. _____

ii. _____

iii. _____

(b) the name and location of the court in which each was filed. NA

i. _____

ii. _____

iii. _____

(c) the disposition thereof.

NA

i. _____

ii. _____

iii. _____

(d) the date of each such disposition:

NA

i. _____

ii. _____

iii. _____

(e) If known, citations of any written opinions or orders
    entered pursuant to each such disposition:

1. _____ NA _____

ii. _____

iii. _____

13. If you did not file a motion under Section 2255 of
    Title 28 United States Code, or if you filed such a
    motion and it was denied, state why your remedy by
    way of such motion is inadequate or ineffective to
    test the legality of your detention:

    (a)

                        NA

    (b)

    (c)

14. Has any ground set forth in (9) been previously presented
    to this or any other federal court by way of petition
    for habeas corpus, motion under Section 2255 of Title 28,
    United States Code, or any other petition, motion or
    application:   NO

15. If you answered "yes" to (14), identify

    (a) which grounds have been previously presented:

                            NA

       i. _____

       ii. _____

       iii. _____

    (b) the proceedings in which each ground was raised:

                            NA

       i. _____

       ii. _____

       iii. _____

16. Were you represented by an attorney at any time during the course of

    (a) your arraignment and plea: ___Yes___

    (b) your trial, if any: ___NA___

    (c) your sentencing: ___Yes___

    (d) your appeal, if any, from the judgment of conviction or the imposition of sentence?
                      Yes
    _____

    (e) preparation, presentation or consideration of any petitions, motions or applications with respect to this conviction, which you filed:
                      NA
    _____

17. If you answered "yes" to one or more parts of (16), list

    (a) the name and address of each attorney who represented you:
         Steve Polin
       i. _____

         _____

  ii. _____

  iii. _____

(b) the proceedings at which each such attorney represented you:

  i.   My Plea _____

  ii.   My Sentencing _____

  iii   My Appeal, For Taking Back My Plea _____

18.   If you are seeking leave to proceed in forma pauperis, have you completed the unsworn declaration setting forth the required information (see instructions, page 1 of this form).

        Executed at _U.S. P. ALLENWOOD   WHITEDER, PA._
              Name of institution, city, state

        I declare under penalty of perjury that the foregoing is true and correct.

        Executed on _____
                Date

        _____
         Signature of Petitioner

# M E M O R A N D U M

# O F

# L A W

## (SEE  ATTACHED)

---

NOTE:      Pro-se litigants pleading are to be construed liberally and
held to less stringent standard than formal pleadings drafted by
lawyers; if court can reasonably read pleadings to state claim on
which litigant could prevail, it should do so despite failure to cite
proper legal authority,confusion of legal theories,poor syntax and
sentence construction; <u>Haines v. Kerner</u>, 404 US 519,30 Led 2d 652 (1972).

Petitioner; **THOMAS R. JONES,** A D.C. Prisoner being housed in U.S.P. Allenwood(A Federal Penitentiary), initial charge was second degree murder while armed; Pleaded guilty to 2nd degree murder unarmed, and carrying a pistol without a license(misdermenor).

## Points and Authorities; U.S. Parole Commission Rules

On April 4, 2000; Thomas R. Jones was seen by a United States Parole Commissioner. The following is the outcome of the hearing and the final outcome of the U.S. Parole Commission's Final Judgement which is quite distruptable and why I bring this motion before the court today.

This Court has jurisdiction over this §2241 petition because claims against the U.S. Parole Commission should be brought in the district where the prisoner is confined. **U.S. v. Kennedy,** 851 F.2d 689,690 (3rd Cir. 1988).

A Habeas Corpus is the proper vehicle for review of a decision by the parole commission. **Stroud v. U.S. Parole Commission**, C.A. Tex, 668 F.2d 843,(1982).

Congress has charged the parole Commission with conducting Parole hearings and thereafter determining whether a given prisoner is eligible for Parole. (18 U.S.C. §4201).

In order to ensure that a prisoner's due process rights are respected through-out the Parole determination, Congress both (a) Codified

10

certain procedural statutes to guide the commission (18 U.S.C. §4206).

and (b) Authorized the commission to promulgate rules and regulations and administer Parole eligibility determination in a fair manner. (18 U.S.C. §4203 (A) (1)).

A rational penal system must have some concern for the probable accuracy of the evidence it uses to make it's decisions. **Gambino** citing **U.S. v. Peri,** 513 F.2d 572, 575 (9th Cir. 1975).

The Supreme Court has held, however, that, due process is flexible and calls for such procedural protections as the particular situation demands. **Bennett v. Bogan,** 66 f.3d 812,818, citing **Morrissey v. Brewer,** 408 U.S. 471, 92 S.Ct 2593, 33 L.ed 2d 484 (1972).

Due process requires that inmates be advised of adverse information that may lead to unfavorable decisions on parole, and be given the opportunity to address it. (**Evans v. Dillahunty,** 622 F.2d 522)

The Commission is required by both statute and regulation to consider all information that is available and "relevant". 18 U.S.C. §4207, 28 CFR § 219.

However, the prisoner must be apprised of the information and afforded an opportunity to respond. 28 C.F.R. §219(c)

The parole operations memorandum states under section 2.73 parole suitability criteria, that, in accordance with D.C. code sec. 24-204(a), the commission shall be authorized to release a prisoner on parole in its discretion after  he or she has served the minimum of the sentenced imposed, or after he or she has served one-third of the term or terms for which he or she was sentenced, as the case may be, if the

11

following criteria are met:

    1) The Prisoner has substantially observed the rules of the institution;

    2) There is reasonable probability that the prisoner will live and remain at liberty without violating the law; and

    3) In the opinion of the Commission, the Prisoner's release is not incompatible with the welfare of society.

    b) It is the policy of the commission with respect to district of Columbia code offenders that the minimum term imposed by the sentencing court satisfies the need for punishment in respect to the crime of which the prisoner has been convicted, and that the responsibility of the commission is to account for the degree and the seriousness of the risk that the release of the prisoner would entail. This responsibility is carried out by reference to salient factor score and the point assignment grid at section 2.80. The Category 1 is a way to measure the risk of recidivism, or the likelihood that an offender will live and remain at liberty without violating the law. This is done by determining the salient factor score. The higher your salient factor score the better. This is because the SFS is used to determine your risk group and the risk groups determine how many points are scored at the beginning of the base point total calculation. If your SFS is 0-3, you will be assigned to the poor risk category (which means your score indicates you are likely to commit another crime) and you will begin the base point score calculation with 3 points. On the other hand, if your SFS is 8 or more you will be assigned to the "very good risk" category(which means your score indicates you probably will not committ another crime) and begin the base point total calculation with zero points. There are two other risks groups between these two extremes. Again, which one you are assigned to depends on the SFS and, the SFS in turn determines your risk group. Finally your risk group determines the number of points you begin with on the Base Point Score Calculation.

The base point score and total point score work in the opposite direction compared to the SFS. The <u>lower</u> your base

Point Score and the Total Score the better. Add the applicable points from categories I (determined by the risk group assignment), Category II (current or prior violence) and Category III (whether death was casued) to determine the Base Point Score. Then, add or subtract the points from Categories IV and V to determine the Total Point Score.

Under Category IV the Commission considers whether the prisoner has been found guilty of committing disciplinary infractions while incarcerated for the current offense. Serious disciplinary infractions including assault on a correctional officer, possession of a deadly weapon, setting a fire so as to risk,harm, introduction of drugs, and participating in a violent demonstration results in 2 points being added to the base Point Score. Other negative institutional behavior results in 1 point being added to the Base Point Score.

Under Category V the Commission considers program achievement as the final factor in assessing your Total Point Score. While incarcerated for the current offence if a person has acceptable institutional behavior with _ordinary_ program achievement 1 point is deducted from the base Point Score. If a person has acceptable institutional behavior with _superior_ program achievement 2 points are deducted for program achievement regardless of whether points have been added for negative institutional behavior during the same period. 28 CFR § 2.80(d).

In determining whether to parole an offender at an initial hearing, the Commission must determine the Total Point Score and then consult the guideline recommendations for the appropriate actions. Remember

13

that your Total Point Score is determined by totaling categories I
through III and then adding in categories IV and V. If you are an
adult offender and your Total Point Score + 0 the guidelines recommend
parole at initial hearing with low level of supervision indicated; if
Total Point Score = 1 the guidelines recommend parole at initial hearing
with high level of supervision indicated; if Total Point Score = 2 the
guidelines recommend parole at initial hearing with highest level of
supervision indicated; if points = 3+ or more the guidelines recommend
denial of parole at initial hearing and schedule rehearing. If the
offender is a Youth Offender and points = 0 the guidelines recommend
parole at initial hearing with conditions established to address treat-
ment needs; if points = 1+ deny parole at initial hearing and schedule
a rehearing based on estimated time to achieve program objectives or
by reference to the guidelines for rehearing.

In the Comment that follows this rule, it states: This Rule carries
forth the statutory criteria for parole contained in 28 DCMR Sec.200.
It explains that the parole function for <u>D.C. Code offenders rest on a</u>
<u>premise different from that of the Federal Parole Guidelines</u>. For D.C.CODE
Offenders, the proposed guidelines in Sec. 280 of these rules treat the
minimum Term of imprisonment imposed by the the court as the measure of
basic accountability for the offense of conviction. The function of
Parole consideration is to determine whether the prisoner would be "a
responsible citizen if he is returned to the community" And whether
"Release on Parole is consistent with the Public safety." See **White v.**
**Hyman,** 647 A.2d 1175 (D.C. App. 1994). Hence, this provision sets forth
the Commission's intention to maintain the fundamental structure of the

D.C. Parole Board's decision making guidelines , while making scoring changes that carry out it's purposes more effectively through an improved measure of the seriousness of the risk each parole applicant poses to public.

Under 18 U.S.C. §4206 provides that Commission may render a decision outside the guidelines for good cause provided the prisoner is furnished a specific explanation for such action.

> N.5 "GOOD CAUSE" for exceeding Parole Commission guidelines exists when the commission finds, for example, that the inmate is involved in an offense with an unusual degree sophistication; has a lengthy prior record, or was part of a large scale conspiracy or continuing criminal enterprise. (**Nunoz-Guardado v. Hadden**, 722 f.2d 618,623 (10th Cir.1983).

The reason given in the notice of action for a decision above or below the guidelines must explain what specific facts were relied upon to distinguish that case from the "typical" cases for which the guidelines are set.

In the instant case, the reasons given by the Parole Commission for fixing a parole rehearing date of 60 months, instead of the 18 to 24 months arrived at under the guidelines, do not constitute a "Rational Basis" for its action.


## SUMMARY OF THE CASE

### DETAILS AND INFORMATION

On 4/4/2000 I, **Thomas R. Jones**, was seen by a commissioner from the Parole Commission for my initial parole hearing. ( I was sentenced to

15

8 to 24 years for 2nd degree murder(unarmed). Eight years (non-mandatory) was the minimum term to be served and then I'm eligible for parole. With time off for good time(which D.C. gives us), I was eligible for parole 12/2000. The U.S. Parole Commission states that they would like to see D.C. Code offenders 6 months prior to their parole eligibility date; and they set a hearing for me on 4/4/2000, Which I seen a commissioner. The Commissioner who conducted the Hearing basically explained to me how the parole hearing would go, how the Point system would go, and his recommendation. As I observed at the hearing, the Commissioner used my Presentence Report in Scoring my point system. The Commissioner who conducted my hearing gave me his recommendation which he would present to the parole commission; which was "Denied Parole" Because my base point score was too high to be release on parole at a initial hearing, and he would recommend that I have a rehearing in 20 months, within the guidelines.(My overall base point score was 5 points, and the guidelines states that I should have a rehearing between 18 to 24 months). As a result of the salient factor score( which the U.S. Parole Commission stated "that it uses to measure the risk of recidivism or the likelihood that an offender will live and remain at liberty without violating the law), I recieved a score of 6 points meaning I am a good risk of going to the street and living a good productive life and being successful on parole.

I have met all of the criteria under the U.S. Parole Commission Rules which are needed to be met to make parole, 1) I have substantially observed the rules of the institution throughout my incarceration; 2) The Commission must believe there is resonable probability that the prisoner will live and remain at liberty without violating the

Law;(Please note that this criteria reflects to the silent factor score, throughout my life I have only been convicted of 2 misdemenors which allowed me to receive a score of 6 points on the salient factor score; Meaning I am a good risk of going to the street and live a good productive life and remain at liberty without violating the law. 3) In the opinion of the Commission, the prisoner's release is not incompatible with the welfare of society.(Please note that this rule also reflects to the salient factor score where I was given a score of 6 Points; Meaning I am a good risk of going to the street and living a good productive life on parole.) 4) I also have peticipated in and achieved certificates in a variety of programs, which includes; G.E.D. The parenting class, NA.,A.A., Life skills, arbric; Learning The Salah, and General Islamic Studies.

On 5/11/2000, I received a action sheet from the U.S. Parole Commission, which stated that I was denied parole, and to continue for a rehearing in December 2005, after 60 months from my parole eligibility date of december 11, 2000.

With a score of 5 Points for my Total Point Score, and my base point score of being 6 points, the rehearing guideline indicate that I should be scheduled for a rehearing within 18-24 months from my parole eligibility date. The Commission claims that after consideration of all factors and information presented(My Presentence Report), (Please note that there are alot of mistakes in my presentence report "Which will be highlighted in the copy I'm sending the court; But even though the parole Commission used my Presentence Report, there are alot of things the parole commission have wrong concerning my presentence report), The Commission claims that a departure from

17

the rehearing guidelines at this consideration is warranted for the following reasons: You are a more serious risk than indicated by your base point score in that the instant murder involved an exceptionally cruel killing of the victim by taking him unaware as he stood by "his" car in conversation with others: The Commission states that I am a more serious risk than indicated by my base point score; The U.S. Parole Commission has stated in its rules that the Parole function for D.C. Offenders rest on a premise different from that of federal Parole Guidelines. For D.C. Code offenders, the proposed guidelines in section 2.80 of the parole commissions rules treat the minimum term of imprisonment imposed by the court as the measure of basic accountability for the offense of conviction. "If the U.S. Parole Commission was to use the minimum term imposed by the sentencing court as the measure of basic accountability ( I would have been granted parole instead of denied parole for them reasons). As far as the point assignment grid in section 2.80 of the commission's rules, I'm to have a rehearing within 18-24 months. The sentencing court have punished me and sentenced me for the nature of the charge for which I was convicted, and with good institution behavior and positive program achievement the court has allowed me to be paroled; For the parole commission to deny me parole for the nature of my charge after the sentencing court has already sentence me for that is double jeopardy. (In the same paragraph of reasons why I was denied parole); The commission states that I killed the victim by taking him unaware as he stood by "his" car in conversation with others. First of all, the whole situation on how the murder took place can not be found in the arrest warrant from my Presentence Report(Which the commission used against me), furthermore, even by the commission using my presentence report and arrest warrant they have made

a mistake; The commission says I took the victim unaware as he stood
near "his" car. There's nothing in the arrest warrant or my pre-
sentence report or anything else that says that it was the victims
car. "The Commission is required by both statute and regulation to
consider all information that is available and "relevant". 18 U.S.C.
§4207; 28 CFR §219.

The next reason the commission says a departure from the rehearing
guidelines are warranted is: I proceeded to shoot the victim at least
6 times, indicating that the murder was a deliberate assassination; If
the commission really paid close attention to my presentence report and
arrest warrant, the commission would have noticed that the arrest war-
rant says that there was two shooters, me and another person, and even
though I'm not implicating no-one else because I know of no other shooter,
but if there was two shooters, than there was two guns, so how can the
commission say how many times I shot the victim; Furthermore, the com-
mission states that this murder was an "Deliberate Assassination:. If
this murder was a deliberate assassination than that would mean that
I would have planned and plotted to kill the victim which would have
constituted for me being charged and convicted of first degree murder
under the D.C. Code, Which I wasn't, I was charged with second degree
murder, and eventually convicted of second degree murder <u>unarmed</u>.

The next reason the commission says a departure from the rehearing
guidelines are warranted is: At my parole hearing I falsely claimed
that I shot the victim in self defense when he pulled a gun on me.
First of all I would like to let the court know that when I took the
Plea to second degree murder unarmed that I was under Psycalogical
medication and was misrepresented by counsel, and eventually got another

lawyer and tried to take my plea back and go to trial and fight the charge in self defense. All of this information is in the presentence report and if the commission really paid close attention to it they would not say I falsely claimed, I shot the victim in self defense, because I have been saying this from day one.

The final reason the U.S. Parole Commission states that a departure from my guidelines is warranted is: My lack of remorse for this crime (Please note that from day one, when the parole commission came to see me, until today; I have expressed how sorry, sad, and how much it hurts me, that I have committed this great crime-sin.

The commission also says I refuse to accept responsibility for this crime, but I have plead guilty to the crime and confessed that I committed this crime-sin, I have even filed to withdraw my appeal of trying to take my plea back for the fact that I have committed a great crime-sin.

And finally the commission states that my contempt for evidence upon which I was convicted, warrants the conclusion that my participation in prison programming would not be a meaningful indicant of my rehabilitation. I never tried to contempt the evidence on which I was convicted of; Of course there were a few factors that pertain to how this murder took place and why this murder took place which would have only been revealed at trial. The commissioner who came to interview me asked me what happened on the day of the murder and I gave him my version. The Commission say that I tried to contempt the evidence for which I was convicted of, but I never tried to do that, I only gave my version because the commissioner asked. The commission also express that the commission comes to the conclusion that my participation in

prison programming would not be a meaningful indicant of my rehabilitation.

20

Prisons and Jails are suppose to be a place where criminals get their act together and better themselves, and one of the main ways of doing this is by positive program achievement. By a person having positive program achievement while he or she is incarcerated, surely shows that he or she is being rehabilitated.

A "Rational" Penal system must have some concern for the parole accuracy of the evidence it uses to make it's decisions. **Gambino** citing **U.S. v. Peri,** 513 f.2d 572,575 (9th Cir. 1975). **Please note:** That I wrote the U.S. Parole Commission a letter expressing a lot of the issues that I am expressing to the court today; But the commission told me my Parole decision from the commission is not appealable; And sent me a letter dated July 6, 2000. (Which is enclosed).

I ask this court to overturn this Parole decision and grant me Parole or order me seen by the U.S. Parole Commission as soon as possible.

For the reasons as set forth, the parole commission decision should be over turned and grant the Petitioner Parole or order that the Petitioner be seen by the U.S. Parole Commission to have this hearing conducted over again as soon as possible please; For the reasons which I ha stated or any other rules of the U.S. Parole Commission or law that applies to this case of this Petitioner being wronged by the U.S. Parole Commission that the court may think of.

BOARD OF TRUSTEES

FREDERICK D. COOKE JR
CHAIRPERSON
FRANCIS D. CARTER
VICE CHAIRPERSON
JOE ROBERT CALDWELL JR
ANGELA JORDAN DAVIS
MARIE C. JOHNS
MICHAEL J. MADIGAN
WILLIAM W. TAYLOR III
NANCY WARD WARE

# PUBLIC DEFENDER SERVICE

FOR THE DISTRICT OF COLUMBIA

451 INDIANA AVENUE, N.W.

WASHINGTON D C 20001-2775

(202) 628-1200
1800) 341-2552
FAX (202) 626-8423
FAX (202) 626-8437

AVIS ANN WALLACE
DIRECTOR

S PAMELA THOMAS-GRAHAM
DEPUTY DIRECTOR

## U.S. PAROLE COMMISSION AUTHORITY OVER D.C. CODE OFFENDERS

On August 5, 1998 paroling authority of the D.C. Board of Parole was transferred to the U.S Parole Commission under the National Capital Revitalization and Self-Government Improvement Act of 1997. Public Law 105-33 (hereinafter "the Act"). District of Columbia Board of Parole Regulations were revised and published in the Federal Register as interim rules of the U.S. Parole Commission. When finalized, these rules will be published in their final form in the Code of Federal Regulations (hereinafter "CFR") at 28 C.F.R. Part 2.

Under the Act, the U.S. Parole Commission has assumed the authority of the District of Columbia Board of Parole to grant and deny parole, and to impose conditions of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code. The regulations noted above will be used in making the parole decisions for D.C. Code offenders. This includes youth offenders who are committed to prison for treatment and rehabilitation based on felony convictions under the D.C. Code. The new law does not change a prisoner's eligibility for parole. The parole eligibility date, mandatory release date, and full term date will continue to be determined according to the laws applicable at the time you were sentenced.

The District of Columbia Board of Parole will continue to supervise District of Columbia Code offenders who have been released to parole or mandatory release supervision, and to return such offenders to prison upon an order of revocation. This includes D.C. Code offenders paroled by order of the U.S. Parole Commission. The supervision and revocation authority of the District of Columbia Board of Parole will be transferred to the U.S. Parole Commission by August 5, 2000, pursuant to § 11231(a)(2) of the Act.

## How Do I Apply For Parole?

Everyone must apply for a parole hearing before the U.S. Parole Commission pursuant to 28 CFR § 2.71. You must apply by using the U.S. Parole Commission application form. Attached is a copy of the application form which should be made available by your case manager and forwarded to the Commission through your case manager. Completed applications should be mailed to The U.S. Parole Commission, 5550 Friendship Blvd., Chevy Chase, MD

The Category I is a way to measure the risk of recidivism, or the likelihood that an offender will live and remain at liberty without violating the law. This is done by determining the SFS. See Attached SFS score sheet. The higher your Salient Factor Score the better. This is because the SFS is used to determine your risk group and the risk groups determine how many points are scored at the beginning of the Base Point Total calculation. If your SFS is 0-3, you will be assigned to the "Poor Risk" category (which means your score indicates you are likely to commit another crime) and you will begin the Base Point Score calculation with 3 points. On the other hand if your SFS is 8 or more you will be assigned to the "Very Good Risk" category (which means your score indicates you probably will not commit another crime) and begin the Base Point Total calculation with zero points. There are two other risks groups between these two extremes. Again, which one you are assigned to depends on the SFS and, the SFS in turn determines your risk group. Finally your risk group determines the number of points your begin with on the Base Point Score calculation.

The Base Point Score and Total Point Score work in the opposite direction compared to the SFS. The lower your Base Point Score and the Total Point Score the better. Add the applicable points from Categories I (determined by the risk group assignment), Category II (current or prior violence) and Category III (whether death was caused) to determine the Base Point Score. Then add or subtract the points from Categories IV and V to determine the Total Point Score.

Under Category IV the Commission considers whether the prisoner has been found guilty of committing disciplinary infractions while incarcerated for the current offense. Serious disciplinary infractions including assault on a correctional officer, possession of a deadly weapon, setting a fire so as to risk harm, introduction of drugs, and participating in a violent demonstration result in 2 points being added to the Base Point Score. Other negative institutional behavior results in 1 point being added to the Base Point Score.

Under Category V the Commission considers program achievement as the final factor in assessing your Total Point Score. While incarcerated for the current offence if a person has acceptable institutional behavior with ordinary program achievement 1 point is deducted from the Base Point Score. If a person has acceptable institutional behavior with superior program achievement 2 points are deducted from the Base Point Score. Points may be deducted for program achievement regardless of whether points have been added for negative institutional behavior during the same period. 28 CFR § 2.80(d).

In determining whether to parole an offender at an initial hearing, the Commission must determine the Total Point Score and

3

The Commission will not set a rehearing date in excess of five years of the date of the last hearing. The prisoner will be given a rehearing during the month specified by the Commission. The scheduling of a reconsideration date does not imply that parole will be granted at such hearing.

In determining whether to parole an <u>adult offender</u> at a rehearing or recision hearing, the Commission will take the total point score from the initial hearing or last rehearing and adjust that score according to the institutional record of the candidate since the last hearing. Points will be added for disciplinary violations and subtracted for program completions. If points = 0 - 3 the guidelines recommend parole with the highest level of supervision indicated. If points = 4+ the guidelines recommend deny parole at rehearing and schedule a further rehearing.

In determining whether to parole a <u>youth offender</u> appearing at a rehearing or recision hearing the Commission will take the total point score from the initial hearing or last rehearing and institutional record of the candidate since the last hearing. If points = 0-3 the guidelines recommend parole with highest level of supervision indicated. If points = 4+ the guidelines recommend deny parole and schedule a rehearing based on estimated time to achieve program objectives. Your case manager may recommend an earlier rehearing date than that ordered by the Commission if the Commission's program objectives have been met. 28 CFR § 2.80 (1)(2). To maximize your chance of parole avoid disciplinary infractions and complete prison programs.

The only other way to have your case reviewed earlier than the rehearing date is if the Commission decides to reopen a case for a special reconsideration hearing. The Commission may do this based upon the receipt of new and significant information concerning the prisoner. 28 CFR § 2.75(e).

## What Should I Expect At the Hearing?

Each person who applies for parole and is eligible will appear in person for a hearing before a hearing examiner. We have been advised that the USPC schedules hearings at all facilities once a month. The application form should be completed 12 months prior to your parole eligibility date.

The examiner shall review with the prisoner the guidelines and discuss with him/her such information as the examiner deems relevant, including the prisoner's offense, criminal behavior, institutional record, health status, release plans, and community support. 28 CFR § 2.72(a) If any information is missing the examiner may order the hearing to be postponed to the next hearing date so that the missing information can be requested.

5

## When will I receive a Decision from the Commission?

Following each initial or subsequent hearing, the Commission shall render a decision granting or denying parole, and shall provide the prisoner with a notice of action that includes an explanation of the reasons for the decision within 21 days of the hearing, excluding weekends and holidays. 28 CFR §2.74(a).

## How Do I Apply for a Reduction in Minimum Sentence?

If a prisoner has served three or more years of the minimum term of his sentence he may request that the Commission file an application with the sentencing court for a reduction in the minimum term. 28 CFR §2.76 (a) Such request must be in Writing and state the reasons that the prisoner believes such request should be granted. The Commission will require the submission of a progress report before approving such a request. Such an approval requires the concurrence of a majority of the Commissioners. 28 CFR §2.76 (b) If approved an application for a reduction of a sentence will be forwarded to the U.S. Attorney for the District of Columbia for filing with the sentencing court. If the Commission denies the request there shall be a two year waiting period before the Commission will again consider such a request, absent exceptional circumstances. 28 CFR §2.76 (d).

## How Do I Apply For Medical Parole?

A prisoner, or the prisoner's representative, may apply for a medical parole by submitting an application to Mr. Edmund Walsh, Office of Case Management Services, Department of Corrections, who shall forward the application to the Parole Commission accompanied by a medical report and recommendation. This must be done within 15 days. 28 CFR §2.77 (e) It is suggested that a copy of the application be forwarded to the Parole Commission at the time that it is submitted to Mr. Walsh and that it include a detailed discharge plan. Upon receipt of a report from the institution in which the prisoner is confined certifying that the prisoner is terminally ill, or is permanently and irreversibly incapacitated by a physical or medical condition that is not terminal, the Commission shall determine whether or not to release the prisoner on medical parole.

A prisoner may be granted a medical parole on the basis of terminal illness if (1) the institution's medical staff has provided the Commission with a reasonable medical judgment that the prisoner is within six months of death due to an incurable illness or disease; and (2) the Commission finds that the prisoner will not be a danger to himself or others; and (3) release on parole will not be incompatible with the welfare of society. 28 CFR §2.77(b).

7

agent.   28 CFR §2.84 (a).

## Who Do I Contact At the Commission?

Parole Recommendation Letters should be submitted to:

> John R. Simpson
> Commissioner
> U.S. Parole Commission
> 5550 Friendship Blvd
> Chevy Chase, MD 20815

FREEDOM OF INFORMATION ACT Requests should be submitted to:

> Lauren Price
> FOIL Specialist
> U.S. Parole Commission
> 5550 Friendship Blvd
> Chevy Chase, MD 20815

Requests to Meet with Staff should be submitted to:

> Dawn Booze-Hill
> U.S. Parole Commission
> 5550 Friendship Blvd
> Chevy Chase, MD 20815

October, 1998

U.S. Department of Justice

United States Parole Commission

Notice of Hearing Parole Application Wa...
Report of Refusal to Apply Waive or App...

Date: _____

DCDC N-_____    Institution: _____

INSTRUCTIONS: This form should be given to and completed by the inmate 12 months before his parole eligib...
date. If the inmate wants to waive the parole hearing, he should complete the waiver section of this form.  I...
inmate refuses to appear for a hearing, the report of the refusal should be made on this form by institutional s...
This form does not have to be completed for hearings subsequent to the initial hearing, unless the inmate...
previously waived parole consideration or a parole date.  Please make a copy of this form for the institutio...
file, provide the inmate with a copy, and forward the original to the U.S. Parole Commission w...
submitting docket materials.

NOTICE OF HEARING: The U.S. Parole Commission usually schedules an inmate's initial hearing for the do...
six months before his parole eligibility date. Provided you have applied for parole in the space below, and the...
parole Commission has received the documents needed to review your case, you will be given a hearing by a hea...
examiner of the U.S. Parole Commission on the docket of hearings scheduled for the following: - -

_____
(month/year)

PAROLE APPLICATION  I want to be considered for parole, or have applied before and still want to be part...

_____    _____
        Signature                       Date

WAIVER OF PAROLE/PAROLE HEARING

A  _____    I want to waive parole consideration at this time, including any scheduled hearing.
   (initial)    I understand that if I waive or refuse to appear at a scheduled rehearing at which misconduct...
               be considered, I am waiving any parole date I may have been granted.

B  _____    I want to waive the previously granted parole date
   (initial)    NOTE.  A previously waived parole date may be reinstated upon reapplication, provided no...
               adverse information exists in your case.

NOTE.  If you waive parole consideration and then apply/reapply for a hearing, the date of your hearing...
normally be scheduled within 60 days of the Commission's receipt of the application/reapplication.

_____

REPORT OF REFUSAL TO APPLY/WAIVE OR APPEAR:

The above named inmate has refused to complete the application/waiver form or appear for a scheduled p...
hearing (Please provide a brief explanation of circumstances in the space below.)

_____    _____
   Signature of Staff Member                Date

DCDC Modified PAROLE FO...
Revised Ap...

**Your Pts · SFS-98 Item Explanations**        **SALIENT FACTOR SCORE (SFS-98)**

. . . . A - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

. . . . B - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

. . . . C - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation)

. . . . D - Recent commitment free period (three years)
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

. . . . E - Probation/parole/confinement/escape status violator this time
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

. . . . F - Older offenders
If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0

. . . Salient Factor Score (SFS-98) (sum of points for A-F above)

**Your Pts  Total Point Score Item Explanations      TOTAL POINT SCORE**

. . . . I - Contribution from Salient Factor Score
10-8 (Very Good Risk) = +0, 7-8 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3

. . . II - Current or Prior Violence
Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2, No violence in current offense and any felony violence in one prior offense = +1

. . . III - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)
Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder = +2; Current offense was other high level violence = +1

. . Base Point Score (sum I-III above)

. . . IV - Negative Institutional Behavior
Negative institutional behavior involving (1) assault upon a correctional staff member with bodily harm inflicted or threatened; (2) possession of a deadly weapon, (3) setting a fire so as to risk human life, (4) introduction of drugs for purposes of distribution, or (5) participating in a violent demonstration or riot = +2; Other negative institutional behavior = +1

. . . V - Program Achievement
Ordinary program achievement = -1; Superior program achievement = -2

. . Total Point Score (sum of Base Point Score and points for IV and V above)

| Adult Parole/Supervision Guidelines | | | Re-Hearing Guidelines | | Points For SFS Item C | | | |
|---|---|---|---|---|---|---|---|---|
| Total Point Score | Initial Hearing | Re-Hearing | Base Point Score | Months to Re-Hearing | Age | Prior Commitments | | |
| | | | | | | 0-3 | 4 | 5+ |
| | Parole Low Supv | Parole With Highest Level of Supervision | 0-4 | 12-18 | 26 & Up | 3 | 2 | 1 |
| | Parole High Supv | | 5-8 | 18-24 | 22-25 | 2 | 1 | 0 |
| | Parole Highest Supv | | 9 | 22-28 | 20-21 | 1 | 0 | 0 |
| | Deny Parole | Deny Parole | 10 | 28-32 | 0-19 | 0 | 0 | 0 |

Date:

United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

| | |
|---|---|
| Name: JONES, Thomas | Institution:  Allenwood  USP |
| Register  Number:  05208-000 | DCDC No.: 258-784 |

In the case of the above-named, the following parole action was ordered:

Deny parole. Continue for a rehearing in December 2005, after the service of 60 months from your parole eligibility date of December 11, 2000.

**REASONS**:

Base Point Score: 6
Total Point Score: 5

Under the guidelines for D.C. Code offenders at initial hearings, your Total Point Score includes a deduction of 1 point for ordinary program achievement.

The guidelines for adult offenders at initial hearings indicate that parole should not be granted at this time. After consideration of all factors and information presented a departure from the guidelines at this consideration is not warranted.

With your Base Point Score of 6, the rehearing guidelines indicate that you should be scheduled for a rehearing within 18-24 months from your parole eligibility date. After consideration of all factors and information presented, a departure from the rehearing guidelines at this consideration is warranted for the following reason. You are a more serious risk than indicated by your base point score in that the instant murder involved an exceptionally cruel killing of the victim by taking him unaware as he stood by his car in conversation with others. You proceeded to shoot him at least 6 times, indicating that this murder was a deliberate assassination. At your parole hearing, you falsely claimed that you shot the victim in self defense when he pulled a gun on you. Your lack of remorse, refusal to accept responsibility for this crime, and contempt for the evidence upon which you were convicted, warrants the conclusion that your participation in prison programming would not be a meaningful indicant of your rehabilitation.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your Supervision Officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

See the attached sheet for your individual item points and explanations of the Salient Factor Score, Base Point Score and Total Point Score. The tables at the bottom of the sheet present the parole and rehearing guidelines.

RECEIVED
MAY 11 2000

Clerk: las

1. . . . .  A - Prior convictions/adjudications   (adult or juvenile)  None = 3; One = 2; Two or three = 1; Four or more = 0

2. . . . .  B - Prior commitments  of more than thirty days (adult or juvenile)  None = 2; One or two = 1; Three or more = 0

1. . . . .  C - Age at commencement  of the current offense/prior commitments  of more than thirty days (adult or juvenile)  (see table below for an explanation)

1. . . . .  D - Recent commitment  free period (three years)
            No prior commitment  of more than thirty days (adult or juvenile), or released  to the community  from last such commitment  at least three years prior to the commencement  of the current offense = 1; Otherwise  = 0

1. . . . .  E - Probation/parole/confinement/escape        status violator  this time
            Neither on probation,  parole,  confinement,  or escape status  at the time of the current  offense;  nor committed  as a probation,  parole,  confinement  or escape status  violator  this time = 1; Otherwise  = 0

0. . . . .  F - Older offenders
            If the offender  was 41 years or more at the commencement  of the current offense  (and the total score from Items A-E above is 9 or less) = 1; Otherwise  = 0

6. . . . .  Salient Factor Score  (SFS-98)  (sum of points for A-F above)

| Your Pts | Total Point Score Item Explanations       TOTAL POINT SCORE |
|----------|------------------------------------------------|
| +1. . . . | I - Contribution  from Salient  Factor Score<br>10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3 |
| +2. . . . | II - Current  or Prior Violence<br>Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence  in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm  in current offense  if current offense is not scored as a crime of violence = +2; No violence in current  offense and any felony violence  in one prior offense = +1 |
| +3. . . . | III - Death of Victim  or High Level Violence  (Category III points  are added  to points  scored in Categories  I and II)<br>Current offense was high level or other violence with death of victim resulting = +3; Current  offense involved  attempted murder or violence in which death of a victim would have been a probable result = +2; Current  offense was other high level violence = +1 |
| 6. . . . | Base Point Score  (sum I-III above) |
| +0. . . . | IV - Negative Institutional  Behavior<br>Negative institutional  behavior involving: (1) assault upon a correctional staff member with bodily harm inflicted or threatened; (2) possession of a deadly weapon; (3) setting a fire so as to risk human  life; (4) introduction  of drugs for purposes of distribution,  or (5) participating  in a violent demonstration  or riot = +2; Other negative institutional  behavior = +1 |
| -1. . . . | V - Program Achievement<br>Ordinary program  achievement = -1; Superior program  achievement = -2 |
| 5. . . . | Total Point Score  (sum of Base Point Score and points for IV and V above) |

| Adult Parole/Supervision  Guidelines | | | Rehearing  Guidelines | | Points For SFS Item C | | | |
|------|------|------|------|------|------|------|------|------|
| Total Point Score | Initial Hearing | Rehearing | Base Point Score | Months to Rehearing | Age | Prior Commitments | | |
| | | | | | | 0-3 | 4 | 5+ |
| 0 | Grant Parole Low Supv | Parole With Highest Level of Supervision | 0-4 | 12-18 | 26 & Up | 3 | 2 | 1 |
| 1 | Grant Parole High Supv | | 5-8 | 18-24 | 22-25 | 2 | 1 | 0 |
| 2 | Grant Parole Highest Supv | | 9 | 22-28 | 20-21 | 1 | 0 | 0 |
| 3 | Deny Parole | | 10 | 26-32 | 0-19 | 0 | 0 | 0 |
| 4+ | | Deny Parole | | | | | | |

RECEIVED
MAY 1 1 2000

RECE...

FEB 2 8 1997

CHAMBERS OF
JUDGE HOLMES WINFI

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
SOCIAL SERVICES DIVISION - ADULT BRANCH

### PRESENTENCE REPORT

**PDID No.:** 407-256/465-455
**Docket No.:** F-00733-95F,G

**Re:** Thomas R. Jones     **Date Referred:** 10-18-96

**To:** The Honorable Susan R. Winfield     **Date Due:** 2-28-97

**From:** Probation Officer Thomas Flannery     **Sentencing Date:** 3-5-97

---

**Defendant Information:**
**True Name:** Thomas Rudolph Jones     **Address:** 6604 Piney Branch N.W., Washington, D.C. 2001

**Tel. #:** (202) 723-4263

**Aliases:** Dwayne Fitzhugh; Calvin Lorenzo Jones

**Age/Birthdate:** 23, 9-15-73   **Sex:** Male     **Birthplace:** Washington, D.C.

**Time in D.C. Area:** Lifetime     **Citizenship:** US
    **Alien No.:** N/A

**Marital Status:** Single   **Dependents:** 1     **Education:** 9th Grade

**Social Security No.:** 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     **Permit No.:** None

**DCDC No.:** 258-784     **FBI No.:** 276 010 VA7

---

**Offense, Code and Penalty:** Please See Page Two

**Plea:** Guilty    **Judgment:** Guilty     **Bond Status:** Held Without Bond

**Detainers or Pending Charges:** None

**Co-defendants:**
None     **(Dkt No.):** N/A     **(Status):** N/A
    **(Dkt No.):**     **(Status):**

**AUSA:** Evan Corcoran     **Telephone:** (202) 305-1388

**Defense Counsel:** Steven Kiersh     **Telephone:** (202) 347-0200

"In accordance with the U.S. Parole Commission and Reorganization Public Law 94-233, dated March 15, 1976 this report is disclosabl inmates in federal institutions for purposes of parole consideration

2

**ADDITIONAL BIRTHDATES:**

9-6-71

9-6-74

**ADDITIONAL SOCIAL SECURITY NUMBERS:**

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

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

**OFFENSES, CODES AND PENALTIES:**    *15 years to life*

Murder Second Degree; 22-2404; ~~20 Years To Life~~

Carrying a Pistol Without a License; 22-3204; 5 Years/$5,000

*1 Year Mis. Charge*

3

**CONTACTS:**

2-25-97   Jail visit, Arlington County Detention Center - defendant.

2-25-97   Telephone call to AUSA Corcoran, voice mail.

2-26-97   Telephone call to AUSA Corcoran, voice mail.

2-27-97   Telephone call to AUSA Corcoran, voice mail and Anna Marie, defendant's mother.

**OFFICIAL VERSION:**

The Affidavit in support of an Arrest Warrant states that on Monday, November 22, 1993, at approximately 2:00 p.m., police officers of the Fifth District responded to a radio assignment for a shooting in the area of 21st and I Streets, N.E., Washington, D.C.. On arrival the officers found the unconscious body of Ronald Wilkins laying on the ground near the curb in front of 2111 I Street. Mr. Wilkins was dead at the scene, the apparent victim of multiple gunshots.

Mr. Wilkins's remains were transported to the D.C. Medical Examiner's Office where at 3:45 p.m. he was officially pronounced dead by Dr. Pierre-Louis. An autopsy was performed by Deputy D.C. Medical Examiner and the death was ruled a homicide caused by six gunshot wounds.

*[handwritten left margin: EYE WITNESS CLAIMING THERE WAS TWO SHOOTERS]*

An eyewitness to this offense was located and interviewed. The witness stated that the victim was talking to others when an individual opened fire on Mr. Wilkins. The witness began to leave the area but before the witness left it observed a second individual shooting at the decedent. The witness indicated that there was no apparent provocation for the shooting.

The witness identified the first shooter as a black male, six feet to six feet one, skinny, dark complexion, with plaits in his hair. The witness further described the individual by the name of Thomas and indicated that he lived in the high rise apartment building on 9th Street in Southeast Washington. The witness had the telephone number for Thomas and provided that to the police and indicated that Thomas's mother lived around Maryland Avenue in Northeast.

Further investigation into the case revealed that Thomas Jones, PDID # 407-256, is a black male, six feet, two inches tall, 160 pounds, dark complexion, who wears plaits in his hair. In 1993 he resided at 3700 9th Street, S.E. in the District, a high rise apartment building. The telephone number provided by the witness was a number for persons residing at 3700 9th Street, S.E. Thomas Jones's mother resides in the 2100 block of Maryland Avenue, N.E. in the District.

4

**OFFICIAL VERSION:   (Continued)**

The police, conducting investigation into other matters, interviewed a second witness.  As the witness was looking through photographs of individuals associated with the area of 21st & I Streets, N.E., the witness came to the photograph of Thomas Jones, PDID # 407-256, and indicated that Mr. Jones was the person who shot Mr. Wilkins.  The witness indicated that at the time of the homicide it saw Mr. Jones produce a pistol and shoot at Mr. Wilkins as Mr. Wilkins stood next to a car.

*"A CAR" NOT HIS CAR*

Bullets removed from the body of Ronald Wilkins were .38 caliber.  The .38 caliber bullets were found to have markings leaving five grooves with a right twist.

On March 16, 1994, at 11:50 a.m., Thomas Jones was arrested at 719 13th Street, N.W., Washington, D.C.  He was found to be in possession of a .38 caliber revolver.  Bullets from the gun were compared to bullets fired from the pistol seized from Mr. Jones and were found to have similar markings (five grooves with a right twist).

In view of the above facts and circumstances it is requested that a D.C. Superior Court Judge issue a warrant for the arrest of Thomas R. Jones charging him with the murder of Ronald Wilkins.

**Known Injuries or Damages:**

A Victim Impact Statement has not yet been received in this case.

**DEFENDANT'S VERSION:**

The defendant admits shooting the decedent stating that he thought that the decedent was going to shoot him.  They had had an argument over a drug deal that had gone bad.  The defendant is claiming that he acted in self defense.

**PRIOR CRIMINAL RECORD:**

(Juvenile, Washington, D.C.)

| | | | |
|---|---|---|---|
| 11-30-86 | Breaking and Entering<br>Vending Machines<br>J-4032-86 | Consent Decree on<br>1-30-87.  Dismissed:<br>6-5-87 | DCJUV/PP |

5

**PRIOR CRIMINAL RECORD:**  (Continued)

|  |  |  |  |
|---|---|---|---|
|  | Breaking and Entering<br>Vending Machines<br>Count B | Consent Decree on<br>1-30-87.  Dismissed:<br>6-5-87 | DCJUV/PI |
|  | Theft II<br>Count C | Consent Decree on<br>1-30-87, Dismissed:<br>6-5-87 | DCJUV/PI |
|  | Receiving Stolen<br>Property<br>Count D | Consent Decree on<br>1-30-87, Dismissed;<br>6-5-87 | DCJUV/PI |
| 8-25-87 | Neglect: Without<br>Proper Parental<br>Care or Control<br>N-334-87A | Third Party Placement:<br>DHS for 2 years.<br>Dismissed: 3-27-92 | DCJUV/PI |
|  | Unable To Discharge<br>Responsibility<br>Count B | Third Party Placement:<br>DHS for 2 years.<br>Dismissed:  3-27-92 | DCJUV/PI |
| 1-12-88 | Unauthorized Use<br>of a Vehicle<br>Driver<br>J-108-88A | Guilty Plea on<br>2-8-88; Dismissed:<br>12-14-88 | PPSI |
| 2-1-88 | Unauthorized Use<br>of a Vehicle<br>Driver<br>J-382-88A | Dismissed (Plea<br>Bargain):<br>2-8-88 | PPSI |
| 5-11-88 | Robbery - Purse<br>Snatch | Dismissed: 5-11-88 | PPSI |
| 7-25-88 | Unauthorized Use<br>of a Vehicle<br>J-3062-88A | Guilty Plea on<br>9-20-88; Dismissed:<br>12-14-88 | PPSI |
| 10-31-88 | Sale of Cocaine<br>J-4659-88A | Dismissed: 12-14-88 | PPSI |
| 12-28-88 | Unauthorized Use<br>of a Vehicle<br>Passenger<br>J-5427-88A | Dismissed: 12-28-88 | PPSI |
| 3-24-89 | Unlawful Entry<br>J-1062-89A | Dismissed: 3-1-89 | PPSI |

6

**PRIOR CRIMINAL RECORD:** (Continued)

| | | | |
|---|---|---|---|
| 5-8-89 | Disorderly Conduct<br>J-1697-89A | Dismissed: 10-13-89 | PPSI |
| 9-22-89 | Possession of<br>Unregistered<br>Ammunition<br>J-3587-89A | Dismissed: 2-13-90 | PPSI |
| 1-1-91 | Burglary II<br>J-00005-91A | Dismissed: 3-11-91 | PPSI |

(Adult - Annapolis, Maryland)

| | | | |
|---|---|---|---|
| 9-4-92 | Theft Over $300 | No Disposition Listed | PPSI |

(Adult - Washington, D.C.)

| | | | |
|---|---|---|---|
| 12-15-93 | Receiving Stolen<br>Goods<br>M-17680-93A | No Papered 12-15-93 | FBI, DCS |
| 1-29-93 | Unauthorized Use of<br>an Automobile<br>F-962-93A | Closed With Indictment:<br>2-9-93 | FBI, DCS<br>PPSI |
| | Receiving Stolen<br>Goods<br>Count B | Dismissed: 12-14-93 | FBI, DCS<br>PPSI |
| | Unauthorized Use of<br>an Automobile<br>Count C | Plea to a Lesser<br>Included Offense<br>on 8-24-93 | FBI, DCS |
| | Attempt UUV<br>Count D | 1 year, ESS as to<br>all but 6 months,<br>2 years probation<br>on 3-28-94; probation<br>revoked due to<br>technical violations<br>on 3-28-94 | FBI, DCS |
| 2-20-93 | Destruction of<br>Property<br>M-2255-93A | 90 days, ESS, 1<br>year probation;<br>probation revoked<br>due to technical<br>violations on<br>3-28-94 | DCSC |

7

**PRIOR CRIMINAL RECORD:**   (Continued)

| | | | |
|---|---|---|---|
| 4-14-93 | Fugitive From Justice S-996-93A | Returned to Court 5-14-93 | DCSC |
| 5-8-93 | UCSA, Distribution of Marijuana M-6157-93A | Dismissed 12-14-93 | DCSC |
| | UCSA, Possession With Intent to Distribute Marijuana Count B | Dismissed 12-14-93 | DCSC |
| 3-16-94 | Carrying a Pistol Without a License M-3069-94A | Dismissed For Want of Prosecution on 6-21-94 | DCSC |
| | Unregistered Gun Count B | Dismissed For Want of Prosecution on 6-21-94 | DCSC |
| | Ammunition Violation Count C | Dismissed For Want of Prosecution on 6-21-94 | DCSC |
| | Unregistered Gun Count D | Dismissed For Want of Prosecution on 6-21-94 | DCSC |
| | Ammunition Violation Count E | Dismissed For Want of Prosecution on 6-21-94 | DCSC |
| | Carrying a Pistol Without a License Count F | Nolle Prosequi 6-28-95 | DCSC |
| | Unregistered Gun Count G | Nolle Prosequi 6-28-95 | DCSC |
| | Ammunition Violation Count H | Nolle Prosequi 6-28-95 | DCSC |
| | Unregistered Gun Count I | Nolle Prosequi 6-28-95 | DCSC |
| | Ammunition Violation Count J | Nolle Prosequi 6-28-95 | DCSC |

8

**PRIOR CRIMINAL RECORD:    (Continued)**

| | | | |
|---|---|---|---|
| 9-24-94 | Unregistered Gun<br>F-9398-94A | No Papered 9-26-94 | DCSC |
| | Ammunition Violation<br>Count B | No Papered 9-26-94 | DCSC |
| | Possession of a<br>Prohibited Weapon<br>Gun<br>Count C | No Papered 9-26-94 | DCSC |
| | Carrying a Pistol<br>Without a License<br>Count D | Indicted (Closed)<br>on 10-12-94 | DCSC |
| | Carrying a Pistol<br>Without a License<br>Count E | Jury Trial 3-5-97 | DCSC |
| | Unregistered Firearm<br>Count F | Jury Trial 3-5-97 | DCSC |
| | Unlawful Possession<br>of Ammunition<br>Count G | Jury Trial 3-5-97 | DCSC |
| 10-28-94 | Bail Reform Act<br>Felony<br>F-7040-95A | Indicted (Closed)<br>on 2-15-95 | DCSC |
| | Bail Reform Act<br>Felony<br>Count B | Jury Trial 3-5-97 | DCSC |
| 12-22-94 | First Degree Murder<br>While Armed<br>F-733-95A | Dismissed 2-2-95 | DCSC |
| | Second Degree Murder<br>While Armed<br>Count B | Indicted (Closed)<br>on 4-12-95 | DCSC |
| | Felony Murder<br>While Armed<br>Count C | Plea to A Lesser<br>Included Offense<br>10-16-96 | DCSC |

*[handwritten annotation: "Misdemeanor Dismissed"]*

*[handwritten annotation: "Dismissed"]*

9

**PRIOR CRIMINAL RECORD:  (Continued)**

| | | |
|---|---|---|
| Possession of a Firearm during the Commission of a Crime of Violence Count D | To Be Dismissed at Sentencing | DCSC |
| Carrying a Pistol Without a License Count E | To Be Dismissed at Sentencing | DCSC |
| Carrying a Pistol Without a License Count F | Instant Offense | DCSC |
| Second Degree Murder Count G | Instant Offense | DCSC |

*CONVICTED*

**(Annapolis, Maryland)**

| | | | |
|---|---|---|---|
| 1-17-95 | CDS Paraphernalia | Not Guilty | FBI |

**(Landover, Maryland)**

| | | | |
|---|---|---|---|
| 12-21-95 | Transportation of Handgun | No Disposition Listed | FBI |

**(Washington, D.C.)**

| | | | |
|---|---|---|---|
| 4-7-96 | UCSA, Distribution of Marijuana F-3004-96A | No Papered 4-8-96 | DCSC |
| | Ammunition Violation Count B | No Papered 4-8-96 | DCSC |
| | Carrying a Pistol Without a License Count C | Indicted (Closed) on 5-8-96 | DCSC |
| | UCSA, Distribution of Marijuana Count D | Bench Warrant issued on 5-23-96 for Failure to Appear for Arraignment | DCSC |
| | UCSA, Possession With Intent to Distribute Marijuana Count E | Bench Warrant issued on 5-23-96 for Failure to Appear for Arraignment | DCSC |

*I WAS LOCKED - UP*

10

**PRIOR CRIMINAL RECORD:    (Continued)**

| | | |
|---|---|---|
| Carrying a Pistol Without a License Count F | Bench Warrant issued on 5-23-96 for Failure to Appear for Arraignment | DCSC |
| Possession of a Prohibited Weapon Felony Count G | Bench Warrant issued on 5-23-96 for Failure to Appear for Arraignment | DCSC |
| Unregistered Firearm Count H | Bench Warrant issued on 5-23-96 for Failure to Appear for Arraignment | DCSC |
| Unlawful Possession of Ammunition Count I | Bench Warrant issued on 5-23-96 for Failure to Appear for Arraignment | DCSC |

*I was locked-up on current charge* (handwritten annotation)

**PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT:**

The defendant is currently pending trial on two separate offenses.  He is scheduled to go to trial on 3-5-97 in both Docket F-740-95 and F-9398-94.  The defendant is also pending an outstanding child support warrant dated 5-23-96, Warrant # W933690384.  The defendant has been incarcerated throughout the predisposition period and was interviewed by this writer at the Arlington County Detention Center.  He was cooperative during the interview.

**EMPLOYMENT HISTORY:**

From 1992 until the present the defendant stated that he has been working part time on an infrequent basis for Tracy Labor.  He stated that he does construction work and that he is paid in cash.  There is no telephone listing for Tracy Labor.

**SOCIAL HISTORY:**

**Sources of Verification:** Defendant; Anna Marie, Defendant's mother; Previous Presentence Report

11

### Family History

The defendant indicated to this writer that his father has been dead since 1979. He stated that he is presently living with his girlfriend, Ms. Tracey Branch and with his two year old son, Kahn Branch. According to Superior Court records, the defendant has been involved with the Department of Human Services and the D.C. Superior Juvenile Court since 1986. A previous Presentence Report submitted by Probation Officer John Walsh and dated 11-8-93 alludes to the fact that the defendant and his brother, Calvin (DOB: 9-6-74) and sister Thomasine (DOB: 9-24-72) did not receive adequate supervision and care from their mother and grandmother. Records in the neglect case characterize the mother as mildly retarded and extremely dependent on her ailing alcoholic mother. The defendant, the oldest child, frequently ran away from home and stayed away from school. He became attached to the family of a friend and eventually moved in with them. The family experienced financial difficulties and entered a homeless shelter. His residence with the family was not accepted by juvenile authorities and he was placed elsewhere.

Also the defendant was arrested several times for juvenile offenses ranging from Unauthorized Use of a Vehicle to Sale of Cocaine. Reportedly, he owed money to a drug dealer at one time and expressed fear that he would be harmed.

The defendant is described in the juvenile records as resourceful and intelligent, despite his limited education and work experience. He would appear to have adapted more successfully then his brother and sister. Probation Officer Walsh described his life as basically a nomadic and aimless existence.

His last contact with the services of the Juvenile Court ended in 1992. He had been living in a residential program in Council Bluffs, Iowa and returned from there in January, 1992.

Since that time he has remained in a relationship with Ms. Tracey Branch. Ms. Branch is the mother of the defendant's two year old son, Kahn. The defendant has lived at various times with Ms. Branch and her mother, Pearl Ihekwoada. Ms. Branch's mother confirmed that the defendant had lived with her family when he was not at Laurel Racetrack where he was employed as a hot walker.

The defendant indicated that he was the fifth of six children born to his mother and that two of his brothers have been involved with the Criminal Justice System.

12

### Education/Training

The defendant stated that he last attended school at the City Lights Program and prior to that time had attended Hines Junior High School in the District. He stated that he dropped out of school because he had to go to work.

### Military

The defendant has no history of military service although he stated that he has registered for the draft.

### Marital Status and Living Arrangements

The defendant continues to reside with his girlfriend, Ms. Tracey Branch who is the mother of his two year old son.

### Financial Status

The defendant has no assets or debts at the present time.

### Health

The defendant suffers from depression and stated that he is presently taking Thorazine and Haldol. He said that he was under the influence of these medications when he entered his plea of guilty and stated that he was going to try to retract that plea when possible.

### Substance Use/Abuse                    *NEVER USED*

The defendant admits to the use of Marijuana, PCP, Heroin and Alcohol. He stated that his PCP use was daily as was his alcohol use when he was on the street. He stated that he occasionally used Marijuana and Heroin. There are no test results available as the defendant is incarcerated.

**EVALUATION AND DIAGNOSIS:**

Thomas R. Jones, age 23, comes before the Court for sentencing as a result of his plea of guilty to one count of Second Degree Murder and one count of Carrying a Pistol Without a License. The defendant admits shooting the decedent in this case and claimed

*He used the wrong wording* /\

13

**EVALUATION AND DIAGNOSIS:    (Continued)**

self defense. The two men had been arguing over a drug transaction which had gone poorly. The defendant has a rather lengthy record with this Court despite his relative youth. The defendant has been arrested ten times in the District of Columbia alone. He has been supervised on probation in the past and that probation was revoked due to technical violations. Furthermore, the defendant is pending trial in two other matters. It should also be noted that the defendant has an outstanding warrant for child support. One of the defendant's pending trials is for Bail Reform Act - Felony. The defendant was incarcerated at the Arlington County Detention Center during the predisposition period and was interviewed by this writer at that facility.

The defendant has a rather sporadic work history at Tracy Labor where he claims to do construction work. He is the fifth of his mother's six children and his father has been deceased since 1979. The defendant stated that two of his brothers have been involved in the Criminal Justice System and the defendant had a lengthy history as a child in the Neglect System of the Court. The defendant has a ninth grade education and no history of military service. He has been involved with Ms. Tracey Branch who is the mother of his two year old son since 1992. He has no assets or debts at the present time and stated that he suffers from no physical health problems. The defendant does suffer from depression and is being medicated while incarcerated with Thorazine and Haldol. He has admitted to the daily use of PCP and Alcohol while on the street and the occasional use of Marijuana and Heroin.

This defendant comes before the Court having entered a plea of guilty to one of the most serious of criminal offenses. The defendant has been tried and found wanting as a probationer and the nature of the Instant Charge is too serious for this writer to even consider a recommendation of probation. The defendant is not Youth Act eligible due to the nature of the Instant Case and his age. Furthermore he is not eligible for the Urban Services Program due to the nature of the Instant Offense.

**TREATMENT PLAN:**

1.    General conditions.

2.    Verifiable gainful employment.

3.    Drug testing, treatment if necessary.

14

**RECOMMENDATION:**

Incarceration.

Respectfully submitted,

Thomas Flannery
Probation Officer
(202) 508-1690

Approved by: _Frankie McNeil-Bright_
Frankie McNeil-Bright
Supervisory Probation Officer
(202) 508-1619

TF/lrm

07/06/00 21:04:13    3 PAROLE-> 5705476299 Ri    FAX    Page 001

**U.S. DEPARTMENT    OF JUSTICE**
United  States  Parole  Commission

*5550 Friendship  Boulevard*
*Chevy Chase, Maryland  20815-7201*
*Telephone:  (301) 492-5821*
*Facsimile:  (301) 492-5525*

July  6, 2000

Thomas  R. Jones
Reg.  No. 05208-000
c/o Trish  Rodman
Case Manager  Coordinator
Allenwood  USP
P.O. Box 3500
White  Deer, PA  17887

Dear Mr. Jones:

This is to acknowledge  the letter  that  you sent  to the  Parole  Commission  regarding
your  initial  parole  hearing.    Parole  decisions  for  D.C.  Code  offenders  are  not
appealable.    The  basis  for  the  Commission's  decision  is  indicated  in  the  reasons
section of your May 4, 2000 *Notice of Action*.

Although  the  outcome  of your  hearing  was  not  what  you  desired,  you are  to be
commended  for  your  positive  programming  efforts  (completion  of *G.E.D.*  and  a
*Parenting and Life Skills*  course,  and  ongoing  participation  in *Narcotics Anonymous*
and *Alcoholics Anonymous*).

Thank  you for your  interest  in this  matter.

Sincerely,

*Mary Jo Williams*

Mary Jo Williams
Case Analyst

MJW/mjw

BOP-Allenwood    USP