*See Attachment*

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS R. JONES,                    :
                                    :
        Petitioner                  :
                                    :
    v.                              :    CIVIL NO. 1:CV-00-2220
                                    :
JAKE MENDEZ, ET AL.,                :    (Judge Kane)
                                    :
        Respondents                 :

**MEMORANDUM**

**Background**

FILED
HARRISBURG, PA

JUL 1 8 2001

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

Thomas R. Jones, an inmate presently confined [at] Allenwood United States Penitentiary [in White Deer,] Pennsylvania, initiated t[his action for a] writ of habeas corpus pursuant to [28 U.S.C. § 2241. With] his petition, Jones submitted [the requisite $5.00 filing] fee for this action. Named [as Respondents are the United] States Parole Commission ("Commiss[ion") and the Warden] of USP Allenwood.

*CV-00-2220 Closing PRSLC Belisario*

Jones states that on A[ugust 9, 1983, he was sentenc]ed by the Superior Court for the District of Columbia to a term of 8 to 24 years imprisonment after pleading guilty to second degree murder and carrying a pistol without a license. Jones states he was arrested and charged with first degree murder while armed, but the

Certified from the record
Date 7-18-01
Mary E. D'Andrea, Clerk
Per _____
   Deputy Clerk

charge was dismissed at preliminary hearing and, instead, was indicted for second degree murder. (Doc. 6 p. 6) He asserts that he was denied parole on April 4, 2000.

At the initial parole hearing, the Commission denied parole based on the guidelines. (Doc. 5 p. 10-11) The hearing examiner recommended applying the guidelines and setting a rehearing in 20 months. (Doc. 5 p. 8) An addendum was added to the D.C. Initial Hearing Summary by "Shoquist"[1] recommending a departure from the guidelines. Id. at 9. The Commission followed Shoquist's recommendation and departed from the guidelines in determining the time for a rehearing. Id. at 10. The Commission ordered the rehearing be held after service of 60 months. In justifying its departure, the Commission stated that Jones was a more serious risk than indicated by his Base Point Score.

In the instant petition, Jones alleges he is unlawfully being held in custody on two grounds: (1) the Commission denied him parole for the exact same reasons he received the sentence he is currently serving thus violating "double jeopardy;" and (2) the Commission went outside of the rehearing guidelines for "no justifiable reason." (Doc. 1, p. 3) Respondents assert the petition should be denied because: (1) the double jeopardy clause

---

[1] The record before this Court does not indicate Shoquist's title or position with the Commission.

2

applies only to criminal prosecutions; and (2) the Commission's actions are supported by a rational basis in the record. The matter is ripe for consideration. For the reasons that follow, the petition will be denied.

**Discussion**

It is well settled that the determination of eligibility for parole has been committed by Congress to the discretion of the Commission. <u>United States v. Addonizio</u>, 442 U.S. 178 (1979); <u>Campbell v. United States Parole Commission</u>, 704 F.2d 106 (3d Cir. 1983). The Commission shall also exercise authority over District of Columbia Code offenders pursuant to Section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, P.L. 105-33, and D.C. Code 24-209. <u>See</u> 28 C.F.R. §2.70. Therefore, the Commission has authority over Jones who is a D.C. offender. The guidelines for D.C. offenders are regulated by 28 C.F.R. §2.80.

The function of judicial review of a Commission decision on a petition for writ of habeas corpus is to determine whether the Commission abused its discretion. The Court is not empowered to substitute its judgment for that of the Commission in evaluating a habeas petitioner's claims unless the Commission's exercise of discretion represents an egregious departure from rational decision-making. <u>See</u> <u>Butler v. United States Parole Commission</u>, 570

3

F. Supp. 67-77 (M.D. Pa.1983).

The Court of Appeals for the Third Circuit has routinely recognized that a federal court's review of a decision issued by the Commission is limited. <u>Furnari v. Warden</u>, 218 F.3d 250, 254 (3d Cir. 2000). The standard applied in such a review "'is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" <u>Id.</u> (quoting <u>Zannino v. Arnold</u>, 531 F.2d 687, 691 (3d Cir. 1976). However, the review should consider whether the Commission "'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.'" <u>Id.</u> (quoting <u>Zannino</u>, 531 F.2d at 690).

As the Third Circuit noted in <u>Furnari</u>, "[t]he Commission is required, under 18 U.S.C. § 4206(b), to 'state with particularity the reasons' for a denial of parole. <u>See also</u> 28 C.F.R. § 2.13(d) Furthermore, the Third Circuit has stated, "(w)e do not find it either overly intrusive or contrary to the statute to require the Commission, which is under a statutory mandate to 'state with particularity the reasons for [parole] denial,' to truly provide reasons. We believe that a statement of reasons must reveal

reasoning, and not simply present conclusions, at least where the reasoning is not apparent from the facts of the case." Marshall v. Lansing, 839 F.2d 933, 942-43 (3d Cir. 1988). With the above legal principles in mind, the Court will turn to a consideration of the merits of the petition.

Petitioner first contends the Commission "went against their own rules" in denying him parole. In reviewing the record before this Court, the Commission applied the guidelines in determining Jones' parole eligibility. (Doc. 5 p. 10-11) Based on the guidelines, Jones should have been denied parole.[2] See 28 C.F.R. §2.80(h).

On its face, Jones' first ground alleges that the Commission violated the double jeopardy ban of the Constitution when it denied parole. Because the denial of parole does not change the length of a sentence, the double jeopardy clause is not applicable. See Alessi v. Quinlan, 711 F.2d 497, 501 (2d Cir. 1983) ("A denial of parole is a decision to withhold early release from the confinement component of a sentence. It is neither the imposition nor the increase of a sentence, and it is not punishment for purposes of the Double Jeopardy Clause.") Mahn v. Gunter, 978 F.2d 599, 602

---

[2] Based on the D.C. Offender guidelines, if an adult offender's Total Point Score equals three points or more, his parole is to be denied at initial hearing and schedule rehearing in accordance with 28 C.F.R. §2.75 (c) and the time ranges set forth in 28 C.F.R. §2.80(j). Jones' Total Point Score was five.

5

(10th Cir.1992) ("Because the denial of parole does not change the length of a prisoner's sentence, it is not the imposition "'of more than one punishment for the same offense'" as prohibited by the double jeopardy clause.")(cites omitted). Because the Commission followed the guidelines and properly denied Jones parole request, his first claim is without merit and will be denied.

Jones' second allegation is that the Commission went beyond the guidelines in setting his parole rehearing date without "justifiable reason." (Doc. 1 p. 3) Based on Jones' petition and traverse, he contends that the Commission used the same factor in scoring him pursuant to the guidelines and as an aggravating factor justifying a decision above the guidelines resulting in inappropriate double-counting. He further contends that the Commission abused its discretion by concluding that he had committed offenses charged in the dismissed counts of the charging instrument.

Respondents contend the Commission's decision to depart from the guidelines is based on findings that are supported by a rational basis in the record. The Commission provided the following reasoning for its departure:

> "You are a more serious risk than indicated by your Base Point Score in that the instant murder involved an exceptionally cruel killing of the victim by taking him unaware as he stood by his car in conversation with others. You proceeded to shoot him at least 6 times,

6

> indicating that this murder was a deliberate assassination. At your parole hearing, you falsely claimed that you shot the victim in self defense when he pulled a gun on you. Your lack of remorse, refusal to accept responsibility for this crime, and contempt for the evidence upon which you were convicted, warrants the conclusion that your participation in prison programming would not be a meaningful indicant of your rehabilitation."

(Doc. 5 p. 10) Respondents state these factors amount to unusual circumstances which allow the Commission to depart from the guidelines.

To determine whether there is a rational basis in the record to warrant departure from the guidelines in this matter, it is necessary for this Court to review the procedures that dictate when rehearing is scheduled. Next, the Court must review how those procedures were applied to Jones.

An inmate's Base Point Score is used to determine the setting of his rehearing.[3] The Base Point Score consists of three categories: (1) Category I -- risk of recidivism (Salient Factor Score)[4]; (2) Category II -- Current or prior violence (type of

---

[3] If parole is denied or rescinded, the time for the subsequent hearing is determined by the guidelines. 28 C.F.R. §2.80(j)(1). The Base Point Score is used to determine when the next parole review shall be held. 28 C.F.R. §2.80(j)(2).

[4] Computation of the Salient Factor Score is based on a consideration of the following: (1) the number of prior convictions/adjudications; (2) the number of prior commitments in excess of 30 days; (3) the inmate's age at the commencement of the current offense/prior commitments in excess of 30 days; (4) the

7

risk); and (3) Category III -- death of victim or high level violence. See 28 C.F.R. §2.80. Jones scored a six for his Salient Factor Score indicating he was a "good risk" for parole and resulting in a +1 for his Category I score. (Doc. 5 p. 11) He scored a +2 for violence in his current offense for his Category II score. Id. For Category III, Jones scored +3 because the current offense was high level or other violence with death of victim resulting.[5] Id. Therefore, Jones received a Base Point Score of six (6). Based on the guidelines, Jones' rehearing should have been 18-24 months after his initial eligibility. (Doc. 5 p. 8)

---

length of the recent commitment free period; (5) whether the inmate was on probation or parole or in confinement or escape status at the time of the instant offense; and (6) whether the inmate was older or younger than 41 years of age at the commencement of the current offense. 28 C.F.R. § 2.20.

[5]High level violence in Category III means any of the following offenses-
  (i) Murder;
  (ii) Voluntary manslaughter;
  (iii) Arson of an occupied (or potentially occupied) building;
  (iv) Forcible rape or forcible sodomy (first degree sexual abuse);
  (v) Kidnapping, hostage taking, or any armed abduction of a victim during a carjacking or other offense;
  (vi) Burglary of a residence while armed if a victim was in the residence at the offense;
  (vii) Obstruction of justice through violence or threats of violence;
  (viii) Any offense involving sexual abuse of a person less than sixteen years of age;
  (ix) Any felony resulting in mayhem, malicious disfigurement, or other serious bodily injury . . . .
28 C.F.R. §2.80(g)(2).

However, the Commission does have discretion to schedule a rehearing at a time different from that indicated by the guidelines. 28 C.F.R. §2.80(m)(1).

According to the regulations, the Commission "may, in unusual circumstances, waive the Salient Factor Score and the pre- and post-incarceration factors . . . to schedule a reconsideration hearing at a time different from that indicated" by the guidelines. Id. Unusual circumstances are "case-specific factors that are not fully taken into account in the guidelines, and that are relevant to the grant or denial of parole." Id. If the Commission departs from the guidelines, the Commission "shall specify in the notice of action the specific factors that it relied on in departing from the applicable guideline or guideline range." Id. The guidelines also provide factors that may warrant a decision above the guidelines.[6]

---

[6] The factors include, but are not limited to, the following:
(I) Poorer parole risk than indicated by Salient Factor Score: The offender is a poorer parole risk than indicated by the Salient Factor Score because of-
    (A) Repeated failure under supervision (pretrial release, probation, or parole);
    (B) Lengthy history of criminally related substance (drug or alcohol) abuse; or
    (C) Unusually extensive prior record (sufficient to make the offender a poorer risk than the "poor" prognosis category).
(ii) More serious parole risk: The offender is a more serious parole risk than indicated by the total point score because of-
    (A) Extensive record of violence beyond that taken into account in the guidelines;
    (B) Current offense aggravated by extraordinary criminal

Title 28 C.F.R. §2.19 provides what information the Commission may consider in determining parole eligibility. The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, Salient Factor Score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond. 28 C.F.R. §2.19(c).

The Commission based its departure on the fact that Jones is a "more serious risk than indicated by his Base Point Score" in that the instant murder involved an "exceptionally cruel killing of the victim by taking him unaware as he stood by his car in conversation with others." (Doc. 5 p. 10) The record facts available to the Commission support its determination that the offense was unusually cruel. Petitioner approached an unarmed man and fired on him repeatedly until he was dead. The Board characterized the offense as a "deliberate assassination" and properly found that it qualified as exceptionally cruel.

---

> sophistication or leadership role;
> (C) Unusual cruelty (beyond that accounted for by scoring the offense as high level violence), or predation upon extremely vulnerable victim;
> (D) Unusual degree of violence attempted or committed in relation to type of current offense; or
> (E) Unusual magnitude of offense in terms of multiple victims, money, drugs, weapons, or other commodities involved. 28 C.F.R. §2.80.

10

Even where, as here, Commission findings are supported by the record, the Commission may not "double count." That is, the Parole Commission can not "properly use the same factors in scoring a prisoner pursuant to the guidelines and as an aggravating factor justifying a decision above the guidelines." Harris at 54. However, it is equally well-settled that the Commission can use the nature of a prisoner's convictions as a basis for exceeding the guidelines, even though those same convictions were also used in his sentence computation pursuant to the guidelines. Sutherland v. Keohane, Civ. No. 90-92, slip op., (M.D. Pa. June 6, 1990) (Caldwell, J.); Ronning v. United States, 547 F. Supp. 301, 306 (M.D. Pa. 1982); Harris v. Martin, 792 F.2d 52, 54 (3d Cir. 1986).

Here, Petitioner's Base Point Score was calculated adding points for violence and points for the death of the victim. Petitioner argues that the violence that netted him a Base Point score of six cannot also be considered to support the determination that his offense was unusually cruel, or "double counting" will result. Although Petitioner correctly states the rule of Harris, that the same factor cannot support the assessment of points and then departure from the guidelines, that principle does not apply to Petitioner's case.

Double-counting occurs when the parole commission considers as a basis for departing from the guidelines the same factors it used

either to place the inmate in a particular severity category or to calculate his Salient Factor Score, or both. <u>Malik v. Brennan</u>, 743 F.Supp. 639, 644 (10th Cir. 1990). The Third Circuit Court of Appeals concluded that "(s)ince the purpose of the guidelines is to set forth the factors that the Commission should consider in setting a presumptive release date, it would be irrational and arbitrary to use those same factors to take a prisoner outside the guidelines." <u>Harris</u>, at 54. <u>See</u> <u>Castaldo v. United States Parole Commission</u>, 725 F.2d 94,96(10th Cir. 1984)(The Commission's decision to exceed the guidelines requires something more than the standard reasons for within-guideline denial; in other words, "good cause" for continued incarceration must be established."). <u>Briggs v. United States Parole Commission</u>, 736 F.2d 446, (8th Cir. 1984) ("We note further that the factors which the Commission recited in determining Briggs' offense severity and Salient Factor Score may not also be utilized as justification for deviating from the guidelines. . . .. The reasons for deviating from the guidelines must be beyond and apart from the factors the Commission uses in applying them.")

Jones properly was assessed the highest points possible under Category III for death of victim or high level violence. Within the D.C. offender's guidelines, murder is defined as "high level violence." <u>See</u> 28 C.F.R. 2.80(g)(2). The violence associated with

12

the current offense weighed heavily in Jones being denied parole and will have a substantial impact on future parole hearings.[7] A finding that the petitioner is responsible for violence, and ultimately, death, is proper here, as it would be in any murder case. A finding of "exceptional cruelty," however, will not occur in every murder case. That finding may be appropriate in cases involving contract killings, assassination-style murders, multiple victims, torture, or other such cases. Petitioner correctly asserts that in the ordinary course violence and death cannot be factored in twice, but that is not what occurred in his case. The Commission did not exceed the guideline range based on violence and death, but rather because it found Petitioner's crime so wanton and cold-blooded as to qualify as exceptionally cruel. The Commission acted properly under the guidelines and the case law.

Petitioner's arguments that the Commission wrongfully rejected his self-defense argument and wrongfully held him accountable for a crime that he did not commit must also fail. It is clear from the Commission's findings that it rejected Petitioner's account of the crime and concluded that his culpable mental state exceeded that

---

[7]This is not an insignificant fact because as a result of his Total Point Score, Jones, in all likelihood, will be denied parole when he has his rehearing. The guidelines for decisions at subsequent hearing regarding adult offenders state that "(i)n determining whether to parole an adult offender at a rehearing or rescission hearing, the Commission shall take the total point score from the initial hearing . . ., and adjust that score according to the institutional record of the candidate since the last hearing." 28 C.F.R. §2.80(k). If the inmate scores from 0-3 points, he is eligible for parole with highest level of supervision indicated. A score of 4+ results in a denial of parole. Id.

13

necessary for conviction of second degree murder. These are rational conclusions supported by the record. More importantly, however, they do not form the basis of the Commission's deviation from the guidelines. The Commission properly concluded that Petitioner's crime was exceptionally cruel, and properly departed from the guidelines on that basis.

NOW, THEREFORE, THIS 17th DAY OF JULY, 2001, IT IS HEREBY ORDERED THAT:

1. The petition for writ of habeas corpus is denied.
2. The Clerk of Court is directed to close the case.
3. Based on the Court's decision herein, there is no basis for the issuance of a certificate of appealability

_____
YVETTE KANE
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

July 18, 2001

Re: 1:00-cv-02220    Jones v. Mendez

True and correct copies of the attached were mailed by the clerk to the following:

Thomas R. Jones
USP-ALLENWOOD
Maximum Security Correct. Inst.
#05208-000
P.O. Box 3000
White Deer, PA  17887

Michael Stover, Esq.
Office of General Counsel
U.S. Parole Commission
Park Place, One North Park Bldg.
Room 420, 5550 Friendship Blvd.
Chevy Case, MD  20815

Sharon Gervasoni, Esq.
U.S. Parole Commission
5550 Friendship Boulevard
Chevy Chase, MD  20815

Matthew Edward Haggerty, Esq.
Office of the U.S. Attorney
309 Federal Building
Scranton, PA  18501

cc:
Judge                (✓)         (✓) Pro Se Law Clerk
Magistrate Judge     ( )         ( ) INS
U.S. Marshal         ( )         ( ) Jury Clerk
Probation            ( )
U.S. Attorney        ( )
Atty. for Deft.      ( )
Defendant            ( )
Warden               ( )
Bureau of Prisons    ( )
Ct Reporter          ( )
Ctroom Deputy        ( )
Orig-Security        ( )

7-18-01