UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA
228 WALNUT STREET
HARRISBURG, PA. 17108

THOMAS  R. JONES,

                    Petitioner

        Vs.

JAKE MENDEZ, ET AL.,

                    Respondents

*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*

Docket No: 01-3173

(D.C. Civ. No. 00-cv-02220)

(Kane, J.)

FILED
HARRISBURG, PA

MAR 1 7 2003

MARY E. D'ANDREA, CLERK
Per_____
              Deputy Clerk

Motion to the UNITED STATES DISTRICT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA SEEKING RELIE
From judgement rendered by the Court pursuant
to Civil Rule 60(b)

COMES NOW, the pro-se petitioner, Thomas R. Jones, Petitioner
in the above captioned case, humbly, and, respectfully seeking
Relief pursuant to Civil Rule 60(b) from the judgement
rendered by the United States District Court for the
MIDDLE DISTRICT OF PENNSYLVANIA in the above captioned
case.

(Pro-se litigants pleadings are to be construed liberally and
held to less stringent standard than formal pleadings
drafted by lawyers, if the Court can reasonably read pleadir
to state claim on which litigant could pervail, it should do so
despite failure to cite proper legal authority, confusion of
legal theories, poor syntax and sentence construction).
Haines v. Kerner, 404 U.S. 519, 30 L. 2d 2d 652 (1972).

Page 1

## Issue # 1

In this first issue, petitioner is presenting this Honorable Court with newly discovered evidence that would show that the reasons the Commission gave embodied in the Notice of Action, denying petitioner parole, and thus, going outside of the guidelines, are not rational reasons, or fact, and petitioner should not have been denied parole, and thus taken outside of the guidelines for the reasons embodied in the Notice of Action.

The Third Circuit has noted in <u>Furnari v. Warden</u>, 218 F.3d 25 254 (3d Cir. 2000) that: "[t]he Commission is required, under 18 U.S.C § 4206(b), to 'state with particularity the reasons' for denial of parole. <u>See also</u>  28 C.F.R. § 2.13 (d)

Furthermore, the Third Circuit has stated, "(W)e do not find it either overly intrusive or contrary to the statue to require the Commission, which is under a statutory mandate to 'state with particularity the reasons for [parole] denial,' to truly provide reasons. We believe that a statement of reason must reveal reasoning, and not simply present conclusion, at least wh the reasoning is not apparent from the facts of the case <u>Marshall v. Lansing</u>, 839 F.2d 933, 942-43 (3d Cir. 198

The Commission may take into account any substantial information available to it in establishing the prisoner's offen severity rating, salient factor score, and any aggravating o mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by

the preponderance of the evidence standard, that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability. (Please see, 28 C.F.R. § 2.19(c)).

With the above legal principles in mind, petitioner turns to the issue at hand.

The Commission went outside of the guidelines that the Commission set for petitioner based on information that the Commission has in its record which the Commission held as an accurate and reliable source in the Commission's record, in which petitioner argued that this information should not be held as a accurate or reliable source in the Commission's record, as the information in which the Commission relied upon is but mere third party hearsay.

The Commission has stated in the "Notice of Action" in its statement of reasons for justifying the offense as "exceptionally cruel" and thus, going outside of the guidelines the Commission gave to the petitioner, that : (You are a more serious risk than indicated to your base point score in that the instant murder involved an exceptional cruel killing of the victim by taking him unaware as he stood by his car in conversation with others. You proceeded to shoot him at least (6) times indicating that the murder was a deliberate assassination). Please see, Appendix 4.

This is the Commission's statement embodied in the "Notice

of Action, for justifying the offense as exceptionally cruel, and thus going outside of the guidelines, and it comes from an arrest warrant in which petitioner was charged with 1st degree murder while armed. <u>Please</u> <u>see</u> Appendix B. The Commission used statements from an witness in the arrest warrant to support its conclusion of justifying the offense as "exceptionally cruel", and they are as follows:

(An eyewitness to this offense was located an interviewed. The Witness stated that the victim was talking to others when an individual opened fire on Mr. Wilkins. The witness began to leav the area but before the witness left, it observed a second individual shooting at the decedent. The witness indicated that there was no apparent provocation for the shooting).

<u>And</u>

(The police conducting investigation into other matters, interviewed a second witness. As the witness was looking through photographs of individuals associated with the area of 21st and I street Northeast, the witness came to the photograph of Thomas Jones, PDID # 407 - 256, and indicated that Mr. Jones was the person who shot Mr. Wilkins. The witness indicated that at the time of the homicide it saw Mr. Jones produce a pistol and shoot at Mr. Wilkins as Mr. Wilkins stood next to a car.

<u>And</u>

(Bullets removed from the body of Ronald Wilkins were .38 calibre. The .38 calibre bullets were found to have markings leaving (5) grooves with a right twist. On March 16, 1994 at 11.50 a.m., Thomas Jones was

Page 4

arrested at 719 13th Street, Washington. He was found to be in possession of a .38 calibre revolver. Bullets removed from the were compared to bullets fired from the pistol seized from Mr. Jones were found to have similar markin (5 groove with a right twist)).

These are the statements in which the Commission relied on from (the Commission's) record to support the Commission resons embodied in its statement of reasons for labling the offense "exceptionally cruel", and thus going outside of the guidelines.

Even as petitioner argued that there is nothing in the Commission's record that would support the Commission reasons embodied in its statement of reasons for labling the offense as "exceptionally cruel", stating that, I took the victim unaware as he stood by his car in conversation with others, <u>and</u>, I proceeded to shoot him <u>at lea</u> (6) times indicating that this murder was a deliberate assassination, This Honorable Court made a ruling that The record facts available to the Commission support it determination that the offense was unusually cruel. Petitioner approached an unarmed man and fired on him repeatedly until he was dead. The Board characterized the offense as a "deliberate assassination" and properly found that it qualified as exceptionall cruel.

From the Honorable Court's statement, petitioner

would like to express that there is nothing (in the Commiss
record) that said's whether the victim was armed or not,
or that I fired on him repeatedly until he was dead, so
this Honorable Court's statement is not supported by the
record.

However, the issue is not this Honorable Court's statement,
but is there a rational basis to support the reasons the
Commission gave embodied in the "Notice of Action" for
going outside of the guidelines.

Petitioner is presenting this Honorable Court "newly
discovered evidence" of a factual proffer submitted by
the U.S. Assistant Attorney whom prosecuted the origin
case, that will show that it is a _fact_ that petitioner
did not 'take the victim unaware as he stood by his car
in conversation with others'. In the report (Factal Proffe
it states that (Mr. Wilkins was standing in the 2100 block
of I street, N.E. with three other men. During this time,
a _group_ of men walked up to Wilkins and the others and
started talking). Petitioner was included in the group of
men, and the next statement(s) show that (eg. A short
time later, the group then said goodbye to Wilkins and
began to leave. Thomas Jones and another man stopp
turned and fired a Glock 9mm semi-automatic pisto
and a .38 caliber revolver). 
Being that the factual Proffer states that I was in
the group of men talking to Mr. Wilkins (the victim), an
in the Commission's report the witness stated that

there was <u>no apparent</u> provocation for the shooting, ther isn't a <u>fact</u> or rational basis that would support the Commission's reason embodied in the "Notice of Action" stating that, (I took the victim unaware as he stood by his car in coversation with others). The Commission don't know what was said or done in this conversation that could have provoked the shooting. (Please see Apendix C, page 1)

Also, in the "factual proffer" is evidence that would show that it is a <u>fact</u> that petitioner <u>did not</u> 'proceed to shoot the victim <u>at least</u> (6) times indicating that this murder was a deliberate assassination'.

In the report (Factual Proffer) it states that, (Thomas Jon <u>and</u> another man stopped, turned and fired a Glock 9mm semi—automatic pistol <u>and</u> a .38 caliber revolver. Wilkin was shot <u>six times</u>. (Please see, Appendix C, page 1) The report further states that, (On December 17, 1993, <u>one of the murder weapons</u>, a Glock 9mm pistol, ect.) and (On March 16, 1994, Thomas Jones was arrested at 719 13t Street, N.W. He was found in possession of a .38 caliber revolver and another handgun, which was examined and found to be <u>one of the murder weapons</u>). (Please see Appendix C Being that the Factual proffer states that petitioner <u>and</u> another man shot at the decendent, and, the decendent was shot with two different guns, a 9mm semi—automatic pistol <u>and</u> a .38 caliber revolver, and the victim (decendent) was shot a total of (6) times, and, being that the Commission's report states that bullet(s) instead of [the bullets] that came from the

Page 7

victim's body had similar markings to bullets fired from the gun I possessed (bullet(s) meaning some of the bullets, [the bullets] means all of the bullets), there isn't a fact or rational basis that would support the Commission's reason embodied in the "Notice of Action" stating that, (You proceeded to shoot him at least (6) times indicating that this murder was a deliberate assassination).

The Commission don't know how many times I shot at, or shot the victim (decendent), but it is clear that I <u>did not</u> shoot the victim (decendent) 'at least (6) times'.

Based on this newly discovered evidence, <u>and</u> the arrest warrant, there is no rational basis to support the Commissi reasons embodied in the "Notice of Action" justifying the offense as exceptionally cruel, and thus going outside the guidelines.

Accordingly, this pro-se petitioner respectfully ask This Honorable Court to vacate it judgement and order; and remand this case (issue) back to the U.S. Parole Commission with instructions that the Commission <u>can not</u> go outside of the guidelines for the reasons that the Commission gave embodied in the Notice of Action, and accordingly, petitioner is to be given a new hearing.

<u>Issue #2, The District Court did not entertain the issu</u>

that the petitioner was violated of his due process right under the Commission's statue and rules and regulations when the denied the petitioner parole and went outside of the guidelines for the reasons embodied in the "Notice of Action".

On April 4, 2000, the U.S. Parole Commission conducted a initial parole hearing for petitioner. At the Conclusion of the hearing, the examiner (whom conducted the hearing) told the petitioner that he would recommend to the U.S. Parole Commission panel that the petitioner have a rehearing in (20) months, because petitioner's base point and total point score was too high to recommend that the petitioner be granted parole at the initial parole hearing. With a base point score of (+6) points and a total point score of (+5) points (which examiner assigned to the petitioner) the guidelines at 28 C.F.R. § 2.80 indicate that petitioner should have a rehearing between (18) to (24) months. Upon petitioner recieving his "Notice of Action" from the U.S. Parole Commission, the parole Commission stated that the petitioner was denied parole and to continue for a rehearing in December 2005, (going outside of the guidelines for the reason stated in the "Notice of Action"). The "Notice of Action" ended with that the Action was not appealable. (Please see, Appendix A).

Congress has charged the parole Commission with conducting parole hearings and thereafter determining whether a given prisoner is eligible for parole. 18 U. § 4201 et seq.

In order to ensure that a prisoner's due process rights are respected throughout parole determination, Congress both (a) codified certain procedural statues to guide the Commission, eg. 18 U. S. C. § 4206, and (b) authorized the Commission to promulgate rules and regulations and to administer parole eligibility determination in a fair manner 18 U. S. C. § 4203(a)(1). The Commission in response, established 28 C.F.R. § 2 et. seq.

The Parole Commission's handling of the petitioner's initial parole hearing demonstrates a disregard of these rules and regulations, the sum total of which is a denial of petitioner due process right.

The petitioner did not recieve an opportunity at his initial parole hearing or after his initial parole hearing to rebut the allegations embodied in the "Notice of Action" to deny him parole and go outside of the guidelines.

This action on the part of the Parole Commission constitu a violating of 28 C.F.R. § 2.53 by failing to provide a hearing complying with 28 C.F.R. § 2.19 (c).

The Commission may (as well) deny parole, but it must explai with particularity the reason for the denial and include a summary of the information relied on in making this determination

There is no question that the Commission is entitled to consider documents pertaining to the petitioner, but the Commission must provide a prisoner with notice that the information we be used as evidence to deny him parole, and the prisoner must have an opportunity to respond to the evidence in the documents 28 C.F.R. § 2.19 (c) ("[T]he Commission may take into account any substantial information available to it..... and any aggravating and mitigating circumstances provided the prisoner is apprised of the information and afforded an opportunity to respond."). Patterson v. Gunnell, 735 F. 2d 253, 255 (2d Cir. 1985) (holding that where the National Appeal board had information unknown to prisoner and on which it relied, prisoner case had to be returned for a new hearing so that prisoner would not be "deprive[d].... of a procedural protection guaranteed by the Commissi regulations.").

Furthermore, the opportunity to respond to the evidence in the documents must take place before the examiner proffers his recommendation. 28 C.F.R. § 2.19 (c) expla that after the prisoner has had an opportunity to respond to the evidence, if there exist a factual disput the Commission shall resolve it according to the prepon derance of evidence. It is inconceivable that Congress intended this fact-finding to take place after a hearing examiner makes his determination to grant or deny parole, (quoting GAMBINO v. MORRIS, 134 F. 3d 156 (3rd Cir. 1998), especially since D.C. code offenders don't have

the opportunity of appealing the decision.

In the case at hand, the Parole examiner whom conducted th petitioner's initial parole hearing, gave petitioner his recommendation (which was denied parole, which stemmed from the calculation of the examiner's scoring of petitioner's severity rate of his current offense). The examiner gave the petitioner a base point score of (+6) points, and a total point score of (+5) points. The examiner explained to the petitioner, that being that the guidelines at 28 C.F.R. § 2.80 recommend that the petitioner should be scheduled for a rehearing between (18 to (24) months, he would recommend that petitioner have a rehearing in (20) months.

This was the reason that the examiner denied parole, and recommended that the petitioner have a rehearing in (20) months.

Upon the petitioner recieving his "Notice of Action" from the U.S. Parole Commission denying parole and going outside of the guidelines for different reasons than the examiner's which are embodied in the "Notice of Action" (Please see, Appendix A).

The Commission nevered expressed where this information came from, or the documents in which it obtained this information.

Furthermore, the Commission did not afford the petitioner the opportunity to respond (Please note, that the "Notice

states that the action is not appealable).

This is a very significant issue, because even as the Commission did not inform petitioner of the documents or information which it used to come up with its determinations and conclusions embodied in its Notice of Action for denying parole and thus going outside the guidelines, the Commission denies the petitioner the opportunity to respond to the allegations in the "Notice of Action" by saying that the action is not appealable, which is in violation of the Commission's rules and regulations. (Please see, 28 C.F.R. § 2.19 (c). "[t]he Commission may take into account any substantial information available to it.... and any aggravating and mitigating circumstances, provided the prisoner is apprised of the information and offorded an opportunity to respond".).

In sum, it is clear that the Commission failed to comply with 18 U.S.C. § 4206 (c), and 28 C.F.R. § 2.13 (d) by failing to adequately summarize the information it relied on in denying petitioner parole, and thus going outside of the guidelines.

It is also clear that the Commission failed to comply with 28 C.F.R. § 2.19 (c) when the Commission failed to afford the petitioner the opportunity to respond to the information the Commission relied on for denying parole, and thus, going outside of the guidelines.

Being that the Commission is required by both statue and

regulation to comply with 18 U.S.C. § 4206 (c) and 28 C.F.R.§ 2.19 (c), and the Commission's failure to comply with the Statue and regulations (in petitioner's initial hearing process). Either of these two errors is serious enough to warrant the District Court to vacate its judgement and order; and a remand to the Parole Commission for a new parole hearing. <u>Patterson v. Gunnell</u>, 753 F. 2d 253 (2d Cir. 1985) (remanding for new parole hearing upon finding of Commission's failure to comply with 28 C.F.R. § 2.19 (c)'s notice provision); <u>Marshall v. Lansing</u>, 839 F. 2d 933, 943 (recognizing that setting aside the Commission's action and remanding for a new hearing is appropriate where agency fails to comply with its own regulations (3d Cir. 1988). <u>Please also see</u>, <u>GAMBINO V. MORRIS</u>, 134 F. 3d 156 (3d Cir 1998).

This issue was before The Honorable District Court upon the petitioner filing his habeas Corpus pursuant to 28 U.S.C. § 2241. The pro-se petitioner may not have presented this issue in great detail, however, the pro-se petitioner did make inquiry to this issue.

(Pro-se litigants pleadings are to be construed liberal and held to less stringent standard than formal pleading drafted by lawyers, if the Court can reasonably read pleadings to state claim on which litigant could pervail, it should do so despite failure to cite proper legal authority,

confusion of legal theories, poor syntax and sentence construc-
tion). <u>Haines v. Kerner</u>, 404 U.S. 519, 30 L. ed 2d 252 (1972).

It is clear that the Honorable Court was well affliated with
this issue, because the Court quoted 28 C.F.R. § 2.19(c) in its
judgement — order, however, the Honorable Court did not addre
this issue.

The Third Circuit Court of Appeals has noted that review of
the Parole Commission's actions (should consider whether the
Commission "'has followed criteria appropriate, rational and
consistent' with its enabling statutes so that its 'decision
is not arbitrary and capricious, nor based on impermissible
considerations.'"). <u>Please see</u>, Zannino v. Arnold, 531 F. 2d
at 690).

For the above reasons, petitioner respectfully ask this
Honorable Court to vacate its judgement and order, and
remand the case to the Parole Commission, with
instructions for the Commission to give petitioner
a new parole hearing, and for the Commission to
abide by the Commission's Statue and regulations.

Issue #3, This District Court misinterpreted my argument
<u>of Double Counting</u>.
The petitioner's intent for raising the issue of double
counting was because the Parole Commission scored the

petitioner twice under its guidelines for the violence that occured in the current offense, which would take petitioner outside of the guidelines than he would normally have.

The Commission gave the petitioner (+6) points for his salient facts score (which means that petitioner is a good parole risk). From this, petitioner was given (+1) point from his salient factor score to be added to his base point score, where petitioner recieved (+2) points under the category current or prior violence, for violence in the current offense , and (+3) points under the category Death of victim or high level violence, for current offense was high level or other violence with death of victim resulting.

The parole Commission double counted petitioner by scoring the petitioner twice under the Commission's guidelines for its "base point" score when the Commission gave petitioner (+2) and (+3) points for the violence that occured in the current offense.

For the Commission to give petitioner (+2) points and (+3) point for [the] violence that occured in [the] current offense, would result in inappropriate "Double Counting", because the Commission would be employing the same criteria twice under the Commission's guidelines established for "seriousness of risk".

The petitioner was given point for [the] violence and death

of the victim, when petitioner was give (+3) points for current offense was high level or other violence with death of the victim resulting.

Being that the base point score is to measure the prisoner's "seriousness of risk" of being released to the street, it would be an arbitrary action of the Commission to score petitioner twice for [the] violence that occured in [the] current offense.

These may not be the exact arguments addressed in <u>Harris v. Martin</u>, 792 F.2d (3d Cir. 1986), however, The Third Circuit did state that, (Since the purpose of the guidelines is to set forth factors that the Commission should consider in setting a presumtive release date, it would be irrational and arbitrary to use the same factors to take a prisoner outside the guidelines) <u>see, eg.</u> Harris, 792 F.2d at 55.

The Commission is going outside petitioner's guideline range by "Double Counting" petitioner for [the] violence that occured in [the] current offense, in which would result in the Commission setting a rehearing date beyond what he would normally have.

If petitioner were given (+1) point from his salient factor score to be added to his base point score of (+3) points for current offense was high level or other violence with death of victim resulting, petitioner would have a base point score of (+4) points. With the (-1) point deduction petitioner recieved for ordinary program achiment, petitioner would end up with a total point score of (+3) points, which would mean that petitioner should be scheduled for a rehearing between (12) – (18) months, and at the rehearing

petitioner would be eligible for parole with (+3) points.
However, being that the Commission scored the petitioner twice
for [the] violence in [the] current offense for "seriousness of risk",
giving petitioner a base point score of (+6) points and a total
point score of (+5) points, would mean that petitioner should be
scheduled for a rehearing between (18)—(24) months, and at
the rehearing, petitioner would be denied parole with a total
point score of (+5) points, because the most points a prisoner
can have at a rehearing is (+3) points.

The petitioner tried to show the Honorable Court that the
Commission was using the same factors to take petitioner
outside of the guidelines (the he should have). It is evident
that the petitioner was unsuccessful at getting this issue
accross, however, the Honorable Court was aware of this issue
but did not entertain this issue.

In its (District Court) order and judgement, the Court stated
that, ("Jones properly was assessed the highest points possibl
under category III for death of victim or high level violenc
("Within the D.C. offenders guidelines, murder is defined
as "High level violence").

(Pro-se litigants pleading are to be construed liberally and hel
to less stringent standard than formal pleadings drafted by
lawyers; if the Court can reasonably read pleadings to state
claim on which litigant could pervail, it should do so despite
failure to cite proper legal authority, confusion of legal theor

poor syntax and sentence construction). <u>Haines v. Kerner</u>, 404 U.S. 519, 30 L. ed. 2d 652 (1972).

For the above reason(s), petitioner respectfully ask this Honorable Court to vacate its order and judgement, and to remand the case to the U.S. Parole Commission, with instructions that the Commission can not "double count" petitioner under it guidelines.

For all of the reasons stated in this motion, petitioner respectfu ask the District Court for the Middle District of Pennsylvania to grant the pro-se petitioner the relief sought.

Respectfully submitted,

Thomas R. Jones

Thomas R. Jones # 05208-0

F.C.I. Allenwood

P.O. Box 2000

Whitedeer, PA. 17887

I hereby certify and declare that I placed the enclosed 60(b) motion in the mail for legal mail, here at F.C.I. Allenwood, this 13 day of _March_ 2003, to be issued to the Court and the opposing party, ie. Mr. Matthew E. Haggerty, esq., Assistant U.S. Attorney, at 316 Federal Building; 240 West Third Street, Williamsport, PA. 17703, and, Sharon Gervasoni, esq, UNITED STATES Parole Commission, 5550 Friends Boulevard, Chevy Chase, MD. 20815.

I further certify and declare under the penalty of perjury that the forgoing is true and accurate

Thomas R. Jones

Appendix A

United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

| Name: JONES, Thomas | Institution: Allenwood USP |
|---|---|
| Register Number: 05208-000 | DCDC No.: 258-784 |

In the case of the above-named, the following parole action was ordered:

Deny parole. Continue for a rehearing in December 2005, after the service of 60 months from your parole eligibility date of December 11, 2000.

REASONS:

Base Point Score: 6
Total Point Score: 5

Under the guidelines for D.C. Code offenders at initial hearings, your Total Point Score includes a deduction of 1 point for ordinary program achievement.

The guidelines for adult offenders at initial hearings indicate that parole should not be granted at this time. After consideration of all factors and information presented a departure from the guidelines at this consideration is not warranted.

With your Base Point Score of 6, the rehearing guidelines indicate that you should be scheduled for a rehearing within 18-24 months from your parole eligibility date. After consideration of all factors and information presented a departure from the rehearing guidelines at this consideration is warranted for the following reason: You are a more serious risk than indicated by your base point score in that the instant murder involved an exceptionally cruel killing of the victim by taking him unaware as he stood by his car in conversation with others. You proceeded to shoot him at least times, indicating that this murder was a deliberate assassination. At your parole hearing, you falsely claimed that you shot the victim in self defense, when he pulled a gun on you. Your lack of remorse, refusal to accept responsibility for this crime, and contempt for the evidence upon which you were convicted, warrants the conclusion that your participation in prison programming would not be a meaningful indicant of your rehabilitation.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your Supervision Officer. In certain cases copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

See the attached sheet for your individual item points and explanations of the Salient Factor Score, Base Point Score and Total Point Score. The tables at the bottom of the sheet present the parole and rehearing guidelines.

RECEIVED
MAY 1 1 2000
BY AUD/ESA

Date: May 4, 2000                                                    Clerk: las

05/18/00 22:48:22          U.S PAROLE->          717 547 6299    RightFAX          Page 002

1..... A - Prior convictions/adjudications    (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

2..... B - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

1..... C - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation)

1..... D - Recent commitment free period (three years)
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

1..... E - Probation/parole/confinement/escape status violator this time
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

0..... F - Older offenders
If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0

6..... Salient Factor Score (SFS-98) (sum of points for A-E above)

**Your Pts    Total Point Score Item Explanations          TOTAL POINT SCORE**

+1.... I - Contribution from Salient Factor Score
10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3

+2.... II - Current or Prior Violence
Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1

+3.... III - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)
Current offense was high level of other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1

6.... Base Point Score (sum I-III above)

+0.... IV - Negative Institutional Behavior
Negative institutional behavior involving (1) assault upon a correctional staff member with bodily harm inflicted or threatened; (2) possession of a deadly weapon (3) setting a fire so as to risk human life, (4) introduction of drugs for purposes of distribution, or (5) participating in a violent demonstration or riot = +2; Other negative institutional behavior = +1

-1.... V - Program Achievement
Ordinary program achievement = -1; Superior program achievement = -2

5.... Total Point Score (sum of Base Point Score and points for IV and V above)

| Adult Parole/Supervision Guidelines | | | Rehearing Guidelines | | Points For SFS Item C | | | |
|---|---|---|---|---|---|---|---|---|
| Total Point Score | Initial Hearing | Rehearing | Base Point Score | Months to Rehearing | Age | Prior Commitments | | |
| | | | | | | 0-3 | 4 | 5+ |
| 0 | Grant Parole Low Supv | Parole With Highest Level of Supervision | 0-4 | 12-18 | 26 & Up | 3 | 2 | 1 |
| 1 | Grant Parole High Supv | | 5-8 | 18-24 | 22-25 | 2 | 1 | 0 |
| 2 | Grant Parole Highest Supv | | 9 | 22-28 | 20-21 | 1 | 0 | 0 |
| 3 | Deny Parole | | 10 | 26-32 | 0-19 | 0 | 0 | 0 |
| 4+ | | Deny Parole | | | | | | |

RECEIVED
MAY 11 2000

Date: May 4, 2000                                    Clerk: las

Appendix B

# Superior Court of the District of Columbia

## CRIMINAL DIVISION

## AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

CCNO: 030215294

| DEFENDANT'S NAME: Thomas Rudolph Jones | | | | | C.C.R.: 671-779 | | PDID: 407-256 |
|---|---|---|---|---|---|---|---|
| SEX: Male | RACE: Black | D.O.B.: 9-15-73 | HEIGHT: 6'2 | WEIGHT: 160 | EYES: Brn | HAIR: Blk | COMPLEXION: Dark |

| DEFENDANT'S HOME ADDRESS: 6604 Piney Branch Rd. N.W. | TELEPHONE NUMBER: |
|---|---|
| DEFENDANT'S BUSINESS ADDRESS: | TELEPHONE NUMBER: |

COMPLAINANT'S NAME: Ronald Wilkins (Deceased)

| LOCATION OF OFFENSE: F/O 2111 I. St. NE | DATE OF OFFENSE: 11-22-93 | TIME OF OFFENSE: 2:00 PM |
|---|---|---|

GIVE BRIEF DESCRIPTION OF WHAT HAPPENED:

### PAGE 1 of 2

On Monday, November 22, 1993, at approximately 2:00 P.M., police officers of the Fifth District responded to a radio assignment for a shooting in the area of 21st and I Street N.E., Washington. Upon arrival, the officers found the unconscious body of Ronald Wilkins laying on the ground near the curb in front of 2111 I Street. Mr Wilkins was dead at the scene the apparent victim of multiple gunshots.

Mr Wilkins, remains were transported to the D.C. Medical Examiners Office where at 3:45 P.M he was officially pronounced dead by Dr. Pierre-Louis. An autopsy was performed by a Deputy D.C. Medical Examiner, and the death was ruled a Homicide caused by six gunshot wounds.

An eyewitness to this offense was located and interviewed. The witness stated that the victim was talking to others when an individual opened fire on Mr Wilkins. The witness bega to leave the area but before the witness left, it observed a second individual shooting at the decedent. The witness indicated that there was no apparent provocation for the shooting

The witness identified the first shooter as a black male, 6'0 to 6'1, skinny, dark complexion, with plaits in his hair. The witness further described the individual by the name of Thomas and indicated that he lived in the high rise apartment building on 9th Street in Southeast Washington. The witness had the telephone number for Thomas and provided that to the police, it indicated that Thomas' mother lived around Maryland Avenue in Northeast.

Further investigation into the case revealed that Thomas Jones, PDID# 407-256, is a black male 6'2 tall, 160lbs, dark complexion, who wears plaits in his hair. In 1993, he resided at 3700-9th Street, Southeast; a high-rise apartment building. The telephone number provide by the witness was a number for a person residing at 3700-9th Street, Southeast. Thomas Jones' mother resides in the 2100 block of Maryland Avenue, Northeast.

TO: WARRANT CLERK
PLEASE ISSUE A WARRANT FOR:

Thomas Rudolph Jones

Charge With: Murder I While Armed

_Dennis Halsey_ 12-22-94
ASSISTANT UNITED STATES ATTORNEY

NCIC Approved

AFFIANT'S SIGNATURE:

X _Joseph Fox_

SUBSCRIBED AND SWORN TO BEFORE ME THIS 22nd DAY OF December 19 94

_signature_
(JUDGE) DEPUTY CLERK SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Form CD170-1050 Feb. 82

2-1646 wd-2

Case 1:94-cr-00222-JKB-EG   Document 12   Filed 03/17/2008   Page 25 of 32

# Superior Court of the District of Columbia

## CRIMINAL DIVISION

## AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

U.S.W. No.: U8W 2152-94

| DEFENDANT'S NAME: | | | | C C R: | | PDID: |
|---|---|---|---|---|---|---|
| Thomas Rudolph Jones | | | | 671-779 | | 407-256 |

| SEX: | RACE: | D.O.B. | HEIGHT: | WEIGHT: | EYES: | HAIR: | COMPLEXION: |
|---|---|---|---|---|---|---|---|
| Male | Black | 9-15-73 | 6'2 | 160 | Brn | Blk | Dark |

DEFENDANT'S HOME ADDRESS:
6604 Piney Branch Rd. N.W.

TELEPHONE NUMBER:

DEFENDANT'S BUSINESS ADDRESS:

TELEPHONE NUMBER:

COMPLAINANT'S NAME:
Ronald Wilkins (Deceased)

| LOCATION OF OFFENSE: | DATE OF OFFENSE: | TIME OF OFFENSE: |
|---|---|---|
| F/O 2111 I. St. NE | 11-22-93 | 2:00 PM |

GIVE BRIEF DESCRIPTION OF WHAT HAPPENED:
PAGE 2 of 2

The police, conducting investigation into other matters, interviewed a second witness. As the witness was looking through photographs of individuals associated with the area of 21st and I Streets Northeast, the witness came to the photograph of Thomas Jones, PDID# 407-256, and indicated that Mr Jones was the person who shot Mr Wilkins. The witness indicated that at the time of the homicide it saw Mr Jones produce a pistol and shoot at Mr Wilkins as Mr Wilkins stood next to a car.

Bullets removed from the body of Ronald Wilkins were .38 calibre. The .38 calibre bullets found to have markings leaving 5 grooves with a right twist.

On March 16, 1994 at 11:50 A.M., Thomas Jones was arrested at 719-13th Street, Northwest, Washington. He was found to be in possession of a .38 calibre revolver. Bullets from the were compared to bullets fired from the pistol seized from Mr Jones were found to have similar markings (5 grooves with a right twist).

In view of the above facts and circumstances it is requested that a D.C. Superior Court Judge issue a warrant for the arrest of Thomas R. Jones charging him with the Murder Of Ronald Wilkins.

TO: WARRANT CLERK
PLEASE ISSUE A WARRANT FOR:

Thomas Rudolph Jones

Charge With: Murder I While Armed

_David Schecker_ 12-22-94
ASSISTANT UNITED STATES ATTORNEY

NCIC Approved

AFFIANT'S SIGNATURE:

X _[signature]_

SUBSCRIBED AND SWORN TO BEFORE ME THIS
23rd DAY OF December 19 94

_[signature]_
(JUDGE) DEPUTY CLERK SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA

Form CD(17)-1050 Feb. 82

2-1846 wd-

Appendix C

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CRIMINAL DIVISION - FELONY BRANCH

FILED

FEB 5    4:51 PM '96

SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA
FELONY DIVISION

UNITED STATES OF AMERICA      :    Court Case No. F-733-95

v.      :    Judge WINFIELD

THOMAS R. JONES,
Defendant.      :    Trial Date:   4-23-96

NOTICE OF INTENT TO USE
EVIDENCE OF PRIOR AND SUBSEQUENT GUN POSSESSION

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby notifies the Court of its intention to introduce evidence of defendant's possession of firearms prior and subsequent to the offense date in this case.  Specifically, the United States states as follows:

FACTUAL PROFFER

On November 22, 1993, at approximately 2:00 p.m., Ronald Wilkins was standing in the 2100 block of I Street, N.E. with three other men.  During this time, a group of men walked up to Wilkins and the others and started talking.

A short time later, the group then said goodbye to Wilkins and began to leave.  Thomas Jones and another man stopped, turned and fired a Glock 9mm semi-automatic pistol and a .38 caliber revolver. Wilkins was shot six times.  Police officers from the Fifth District responded to a radio assignment for the shooting.  Upon arrival, they found Wilkins laying unconscious near the curb in the front of 2111 I Street.  He appeared to be dead at the scene. Several bags of cocaine were recovered from him.

Wilkins was transported to the D.C. Medical Examiners Office where he was officially pronounced dead.  An autopsy was performed

1

and the cause of death was found to be multiple gunshot wounds and the manner of death was ruled to be homicide.

On December 17, 1993, one of the murder weapons, a Glock 9mm pistol, was recovered from Shannon Battle who was stopped in a car with James Cullison, Marcus Brooks, and Roy Tatum, not far from the murder scene.  On March 16, 1994, Thomas Jones was arrested at 719 13th Street, N.W.  He was found to be in possession of a .38 caliber revolver and another handgun, which was examined and found to be one of the murder weapons.

The government seeks to introduce evidence that defendant Jones actually and constructively possessed the same or similar weapons that were used to kill Ronald Wilkins, during the month of November, 1993, and during the early part of December, 1993.  The government will **not** elicit on direct examination any evidence that one or both of the murder weapons in this case were also used: in the murder of Andre Wynn on November 8, 1993, in the murder of Mark Tinsley on November 20, 1993, the shooting of a person on November 25, 1993, the murder of Brad Myers on November 27, 1993, the murder of James Butler on November 27, 1993, the murders of Ron and Annis Holder on November 30, 1993, the murder of Ronald Thomas on December 7, 1993, and the murder of Donte Grate on December 11, 1993.  The government will be prepared to offer evidence regarding these murders on redirect examination or in its rebuttal case.

## ARGUMENT

The District of Columbia Court of Appeals has held that "evidence of possession of a weapon on an earlier occasion by one

later charged with using a similar weapon is probative, relevant evidence". Marshall v. United States, 623 A.2d 551, 554 (D.C. 1992) (testimony that witness had seen defendant in possession of Derringer two months prior to killing admissible both under Drew and relevance grounds). The Marshall Court stated that: "The prior possession by an accused of the physical means of committing the charged offense is evidence of the probability of his guilt and is therefore admissible. Id. at 554.

The District of Columbia Court of Appeals "[has] repeatedly held that admissibility of this kind of evidence is based upon a determination of whether it was directly relevant to some issue in the case" King v. United States, 618 A.2d 727, 730 (D.C. 1993) (pistol recovered from appellant's friend's apartment thirteen days after shooting properly admitted where evidence sufficiently linked it in appearance to pistol observed in appellant's possession on day of offense). "The evidence must have some connection with the defendant or the crime with which he is charged, and should not be admitted if the connection is too remote or conjectural." Ali v. United States, 581 A.2d 368, 375 (D.C. 1990) (emphasis in original) (quoting Burleson v. United States, 306 A.2d 659, 661 (D.C. 1973)). The Court has specifically held that this type of evidence is not "other crimes" evidence subject to analysis under Drew v. United States, 331 F.2d 85 (1964). "We have never held, and do not do so now, that such evidence must meet the standards established by the Drew line of cases." King, supra, at 730 (citing Johnson v. United States, 596 A.2d 980, 986-87 (D.C. 1991), cert. denied, Bullock v.

3

United States, 112 S.Ct. 1987 (1992)). Thus, the trial court is not required to undertake the analysis of weighing the probative value of the evidence against its prejudicial effect, as required for "other crimes" evidence. See id.

Observations of the defendant's possession of a Glock 9 mm pistol and a .38 caliber revolver establishes a connection with the defendant and the crimes charged, and is "evidence of the probability of [his] guilt". Marshall, supra at 554.[1] In Ali, supra, 581 A.2d at 375-77, the decedent was killed by a sawed-off shotgun which was not recovered. The District of Columbia Court of Appeals affirmed the admission into evidence of photographs of the defendant with a sawed-off shotgun taken one month before the murder. The Court held that the evidence was sufficiently connected to the charged crime to satisfy the test for relevance and that it constituted evidence of the crime charged; therefore, it was not subject to a Drew analysis. Here, there is a direct connection between the weapons and the crimes charged in the indictment -- the defendant possessed weapons that are the same or similar to the murder weapons before and after the slaying of Ronald Wilkins.[2]

-------

[1]Any uncertainty that the gun described by the witnesses is the same gun that was used to the kill the decedent "would go to the weight of the evidence rather than its admissibility." King, supra, at 730 (citing Ali, supra, at 375).

[2]The time lapse between the observations of the defendant's possession of the above-described firearms are not too remote. See, Marshall, supra (prior possession of pistol two months before crime); Jones v. United States, 477 A.2d 231, 239 (D.C. 1984) (possession of pistol one month before shooting); Coleman v. United States, 379 A.2d 710, 712 (D.C. 1977) (photo of defendant with

WHEREFORE, the United States respectfully notifies the Court of its intent to use evidence of defendant's prior and subsequent gun possession.

Respectfully submitted,

ERIC H. HOLDER, JR.
UNITED STATES ATTORNEY


STEVEN J. McCOOL
ASSISTANT UNITED STATES ATTORNEY
555 4th Street, N.W., Room 4239
Washington, D.C.  20001
(202) 514-7504


CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing opposition has been sent by first class mail to counsel for defendant Thomas Jones, Steven Kiersh, Esquire, 1825 K Street, N.W., Suite 901, Washington, D.C. 20006, this 5th day of February, 1996.


STEVEN J. McCOOL
Assistant United States Attorney

---

pistol five months earlier).

F.C.I. Allenwood
P.O. Box 2000
Whitedeer, PA. 17887



7002 0510 0001 8777 2355

[RETURN RECEIPT REQUESTED]

Clerk of the Court
of the Honorable
Judge Yvette Kane

U.S. District Courthous
228 Walnut Street
P.O. Box 983
Harrisburg, PA. 171

ALLENWOOD FEDERAL CORRECTIONAL INSTITUTION
WHITE DEER, PA 17887-2500

DATE   MAR 1 4 2003

THE ENCLOSED LETTER WAS PROCESSED THROUGH
AL MAILING PROCEDURES FOR FORWARDING TO
THE LETTER HAS BEEN NEITHER OPENED NOR
ECTED IF THE WRITER RAISES A QUESTION OR
LEM OVER WHICH THIS FACILITY HAS
DICTION, YOU MAY WISH TO RETURN THE
RIAL FOR FURTHER INFORMATION OR
IFICATION. IF THE WRITER ENCLOSES
ESPONDENCE FOR FORWARDING TO ANOTHER
ESSEE, PLEASE RETURN THE ENCLOSURE TO THE
E ADDRESS.